## GORHAM COMPANY *v.* WHITE.

1. The acts of Congress which authorize the grant of a patent for designs contemplate not so much utility as appearance; and the thing invented or produced for which a patent is given is that which gives a peculiar or distinctive appearance to the manufacture or article to which it is applied.

2. It is the appearance to the eye that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense, and identity of appearance, or sameness of effect upon the eye, is the main test of substantial identity of design.

3. It is not essential to identity of design that the appearance should be the same to the eye of an expert. If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same,—if the resemblance is such as to deceive such an observer, and sufficient to induce him to purchase one, supposing it to be the other,—the one first patented is infringed by the other.

ERROR to the Circuit Court for the Southern District of New York; the case being thus:

The Patent Act of August 29th, 1842,* enacts:

"That any citizen or citizens, &c., who by his, her, or their own industry, genius, efforts, and expense may have invented or produced any *new and original design for a manufacture, whether of metal* or other material or materials, or any new and original design for the printing of woollen, silk, cotton, or other fabrics, or any new and original design for a bust, statue, or *bas relief*, or composition in *alto or basso relievo*, or any new and original impression or ornament, or to be placed on any article of manufacture, the same being formed in marble or other material, or any new and useful pattern, or print, or picture to be either worked into or worked on, or printed, or painted, or cast, or otherwise fixed on any article of manufacture, or *any new and original shape or configuration of any article of manufacture* not known or used by others before his, her, or their invention or production thereof, and prior to the time of his, her, or their application for a patent therefor, and who shall desire to obtain an exclusive property or right therein to make, use, and sell, and vend the same or copies of the same to others, by them to

---

* 5 Stat. at Large, 543.

be made, used, and sold, may make application in writing to the Commissioner of Patents expressing such desire, and the commissioner on due proceedings had may grant a patent therefor. The duration of said patent shall be seven years."

A subsequent act,* that of March 2d, 1861, re-enacts in substance the same things apparently, and makes some changes in the term of duration of the patent.

With these statutes in force, Gorham & Co., in July, 1861, obtained a patent for a new design for the handles of table-spoons and forks, which under the name of the " cottage pattern " became extremely popular; the most successful plain pattern, indeed, that had been in the market for many years.† The pattern is represented, further on, in the left-hand design on page 521. Gorham & Co. subsequently transferred their patent to the Gorham Manufacturing Company. In the year 1867 one White obtained a patent for a design which he alleged to be original with *him* for the same things; the handles, namely, of forks and spoons; and in 1868 a patent for still another design. Both of his designs are shown on the page already mentioned, alongside of the cottage pattern and to its right hand on the page.

Manufacturing and selling quantities of spoons and forks of these last two patterns, White interfered largely with the interests of the Gorham Manufacturing Company, and that company accordingly filed a bill in the court below to enjoin his making and selling spoons and forks under either of his patents. The validity of the patent held by the Gorham Company was not denied, nor was it controverted that the defendant had sold spoons and forks which had upon them designs bearing some resemblance to the design described in the patent held by the company. But it was contended

---

* 12 Stat. at Large, 248.

† It was testified that the money value of the patent was "immense;" at least $50,000; a very small percentage, as it appeared, of new patterns introduced into the market succeeding; 1 in 40 said one silversmith; not 1 in 20 said another; 1 in 10 to 1 in 50 said a third; 1 in 18 or 20 said a fourth, and it costing from $3000 to $4000 even to those in the trade, to make the necessary dies to introduce any new pattern.

that none of the designs on these articles thus sold were substantially the same as the design covered by the patent held by the company, and that they were independent of anything secured by that patent. The sole question, therefore, was one of fact. Had there been an infringement? Were the designs used by the defendant substantially the same as that owned by the complainants?

Much testimony upon the question of infringement was taken; the complainant producing witnesses sworn to by Mr. Tiffany, of the well-known firm of jewellers and silver smiths in New York, as representative men "in the trade under consideration, unexceptionable in every respect."

Mr. Cook, of the firm of Tiffany & Co., said:

"I should say that the patterns are substantially like one another. I think that an ordinary purchaser would be likely to take one for the other."

E. W. Sperry, a manufacturer of forks and spoons for thirty-seven years:

"I should say that the pattern of White of 1867 was certainly calculated to deceive any one but an expert. Any person seeing one of the Gorham spoons or forks at one end of the table, and one of White's at the other end, could not tell the difference between them; not one man in fifty."

Martin Smith, of Detroit, a merchant jeweller, dealing for ten years in silver spoons and forks:

"In my judgment, if the White pattern were placed in a store different from that in which they had before seen the cottage pattern, seven out of ten customers who buy silverware, would consider it the same pattern."

Theodore Starr, of the Brooklyn firm of Starr & Marcus, merchant jewellers, eight years in business:

"The essential features I consider the same. The resemblance is such as would mislead ordinary purchasers."

H. H. Hayden, of New York, engaged for several years in manufacturing and selling metal goods:

"The two designs are substantially alike. In my opinion

they would mislead, and would be considered one and the same pattern by the trade; by the trade, I mean customers as well as manufacturers."

Alfred Brabrook, agent of Reed & Barton, manufacturers at Taunton, Massachusetts, of Britannia metal and German silver plated ware:

" In many cases the resemblance would mislead ordinary purchasers."

J. T. Bailey, head of the house of Bailey & Co., large dealers in jewelry and silver at Philadelphia:

"I don't think that an ordinary observer would notice any difference *on a casual observation*. But, to a person skilled in this business, of course there are some small differences. I mean to say, that should an ordinary observer come into my store and take up the two spoons, he would not notice any difference in them, unless desired to examine them critically."

H. D. Morse, of the house of Crosby, Morse & Foss, jewellers and venders of silver in Boston, and whose department had been to a good extent designing:

" They are substantially the same thing so far as appearance goes; substantially alike in regard to general effect, with a slight difference in outline. An ordinary observer would see no difference between them."

James A. Hayden, the selling agent of Holmes, Booth & Haydens, manufacturers of spoons in New York:

" The similarity is so strong that it would not be detected without an examination more careful than is usually made by purchasers of such goods."

Mr. C. L. Tiffany, head of the house of Tiffany & Co., aged 55, and dealing in forks and spoons for more than twenty-five years:

" I have no hesitation in saying they are substantially alike. I think the resemblance would mislead ordinary purchasers; and being asked I certainly might myself be misled by it, if not beforehand told of the difference and my attention particularly called to it."

Edward C. Moore, a member of the firm of Tiffany & Co., a designer:

"There *is a substantial difference between the patterns*, but the design of all is so nearly alike that ordinary purchasers would be led to mistake the one for the other. It seems to me that is what the pattern of White is made for."

Newell Mason, carrying on jewelry business in Chicago and Milwaukee for twenty years at least:

"The patterns *are substantially different*, but ordinary purchasers, seeing them apart, would mistake one for the other. If the cottage pattern had acquired popularity in the market, White's would derive advantage from that fact."

John Gleave, a die-sinker:

"Ordinary purchasers would be misled by the similarity between the cottage pattern and White's of 1867, *but not on a second comparison*. If an ordinary purchaser had not a sample of the cottage pattern before him, he would be apt to consider White's of 1867 to be the same with it."

James Whitehouse, a designer in the employ of Tiffany & Co.:

"From my knowledge and experience in the business, I do not regard the designs of White as original, and think that they were suggested by the design of Gorham & Co."

Morse, another of Tiffany & Co.'s designers:

"From my experience as a designer I should think that the designer of White's must have intended to imitate the effect in spirit of the previous design, and yet make a difference. If spoons and forks made after the cottage pattern had obtained a reputation and position in the trade, spoons and forks of White's pattern would find sale by reason of the popularity of the forks and spoons just mentioned. I should think they would be sold for the same thing."

Mr. *Henry* B. Renwick, aged 52, residing in New York, whose principal occupation was the examination of machinery, inventions, and patents, and who during the last sixteen or seventeen years had frequently been examined as

expert in the courts of the United States for various circuits:

"I have examined the spoons and forks made by White, and 1 have no doubt that they are in all respects substantially identical with the Gorham design. Respecting the design secured by White's patent of 1868, I have some little doubt, owing to the increased concavity of outline in the broad part or head of the handle; but still think the better opinion is that it is within the description and drawing of the Gorham patent.

"By the expressions 'substantially' like, I mean such an identity as would deceive me when going as a purchaser to ask for one spoon, if I should be shown another which was slightly different in minute points either of contour or ornamentation. In the present instance, if I had been shown the cottage patterns, at one end of a counter, and afterwards had been shown White's pattern of 1867, at the other end of the same counter, I should have taken both sets of exhibits to have been of the same design, and I did, in fact, take them so to be until I laid them side by side and compared them minutely.

"I do not think that every change either in contour or in ornamentation makes a substantial difference in the design. For instance, take one of Rogers's statuettes of soldiers,* and I do not think the design would be substantially changed so as to evade his patent by substituting a rifle for a musket, or by taking the bayonet off the musket, supposing one existed in the design, or by changing boots for shoes, or vice versâ. Or in the case of one of his soldiers drinking, by substituting a round tub for a square trough, or a glass for a tin cup. In a design for a carpet I should think the design was substantially preserved if the main features of the figure were unaltered, and the minor portion were changed by such changes as the substitution of a ring of flowers for a ring of stars, or quatrefoil for a trefoil ornament, and other such changes. In the present instance, the contours of the plaintiff's articles and the articles manufactured by the defendant are not only substantially but almost identically the same. The Gorham articles and the articles manufactured by White all have a threaded or reeded pattern

---

* These were small casts, very popular at the time, from models by Mr. John Rogers, of military figures and scenes during the late rebellion.—REP.

round the edges, all have a slight knob or boss at the point where there are small shoulders marking the dividing line between the stem and head of the handle, and all have knobbed ornaments near the extreme end of the handle and adjacent to the pointed projection which, in all of them, forms that end. There are, no doubt, minor differences; for instance, the Gorham spoon has two threads along the shank where the defendant's have only one, but that one is of nearly equal width with the two and gives the same effect. In the Gorham the knobbed ornament at the shoulders is connected with the outer thread, while in White's it is connected with the inner thread; but these knobbed ornaments in both are in the same place and have the same general effect; it requiring a very minute examination and actual comparison of the spoons side by side, as I am now making, to perceive and describe the distinction. In the Gorham spoons the knobbed ornaments on the inner reed are at the head of the spoon turned upwards and outwards. In White's they are turned downwards and inwards, and the reed is flattened out, but the substantial shape or contour at the end of the spoon, and the ornamentation thereof, by raised ornaments, partly connected and partly unconnected with the threading, is substantially the same in both. Now, I conceive the Gorham patent to be for a design, one element of which is the contour or shape of the handle, and the other the ornamentation thereof. The shapes of all the exhibits, as I have before stated, except that made under White's patent of 1868, are identical, and regarding it, as I have already stated, I think the better opinion is that it is within the line of substantial identity. It might deceive me, I think, in going from one store to another, but not if shown me in the same shop where I had just examined one of the Gorham spoons. With regard to the ornamentation, the substantial characteristics of the design described in the patent are that there shall be a threaded pattern around the edges of the handle, with a small knobbed ornamentation at the shoulders, as before stated; and also at the head of the handle, where it is finished by a pointed projection. I have already said that I find these substantial characteristics in White's spoons, and as I hold the views with regard to substantial identity and design which I have endeavored to express, I therefore state, as before, that the manufactures of White's are without doubt, in my mind, substantially identical with the Gorham design, and that the better

opinion is that the design in White's patent of 1868 is in the same category, although altered in degree of concavity at the head of the handle, as I have before stated."

On the part of the defendant an equal number of witnesses were produced, including Henry Ball, the senior member of the well-known firm of Ball, Black & Co., New York City, a silversmith and jeweller, who had been in this business since 1832, and numerous other persons, die-sinkers, engravers, editors of scientific publications, persons engaged in the inspection of designs, solicitors of patents, &c. All these testified, one after the other, and pretty nearly in the same words, that the designs were " substantially different;" one witness that they were " substantially different, both in shape and design." Mr. *Edward* S. Renwick, especially, an expert, whose reputation for competency is well known, swore positively that the designs represented by all of the White's manufactures were substantially different from the Gorham design, and stated in detail the items of difference; as thus:

" In the Gorham design the stem of the handle, between the shoulders and the bowl, has a second thread upon it, which is parallel with and inside of the boundary thread. No such second thread is found in White's."

He pointed out fifteen differences of this mechanical kind between the Gorham design and White's, patented in 1867, and sixteen differences between the Gorham design and that of White patented in 1868.

The court below considered that there was no infringement. It said:

" The question to be determined is, whether the designs of the White patents are or are not substantially the same as the design of the plaintiffs' patent. Each design may properly be considered as composed of two elements, the outline which the handle presents to the eye when its broader face is looked at, and the ornamentation on such face. If the plaintiffs' design be compared with the White design of 1867, a general resemblance is found between such outlines in the two designs. In other

words, if the ornamentation on the handle in the plaintiffs' design formed no part of such design, and such design were confined to the form of the outline before mentioned, it would be difficult to say that the plaintiffs' design and the White design of 1867 were not substantially identical. But the moment the ornamentations on the faces of the two handles come to be considered, striking differences appear between the plaintiffs' design and the White design. In the former, the outer thread is broken at the end of the handle, at the shoulders, and at the junction of the handle with the bowl; while, in the latter, such thread is continuous around the entire handle, from the junction of the stem with the bowl or fork back to the same point, it having there the form of a Gothic arch. In the former, the outer thread is, at the shoulders, turned inward to form rosettes, which present the appearance of two parts twisted together; while, in the latter, the outer thread is continuous. In the former, there is, on the stem of the handle, on each side, extending from the shoulders to the bowl or fork, an inner thread parallel with and inside of the outer thread; while, in the latter, there is no such inner thread. In the former, the inner threads on the enlarged end of the handle turn outward from each other towards the end of the handle, so as to form diverging scrolls; while, in the latter, such inner threads, as they approach the end of the handle, turn inwards and form re-entering scrolls. In the former, the scrolls of the inner threads form, at the end of the handle, a part of the outline boundary of the handle; while, in the latter, such scrolls are entirely inside of such outline boundary. In the former, the end of the handle is formed by a tip inserted between the two diverging scrolls into which the inner threads are formed; while, in the latter, the continuous outer thread forms such extreme end. In the latter, a figure in the form of a shield is inserted between the scrolls into which the inner threads are formed and the outer thread; while, in the former, no such figure is found, and no place exists where it could be inserted. In the latter, there is, on each side, a third and short thread, extending from the said scroll to the widest part of the handle; while no such thread is found in the former. In the former, the inner thread on the enlarged end of the handle abuts, at the shoulder next the stem, against the scroll or rosette into which the outer thread is there formed, and looks as if it were a continuation of the outer thread on the stem passed

under the said scroll; while, in the latter, the inner thread on the enlarged end of the handle is, at the shoulders, turned into a scroll or rosette, and has no appearance of being a continuation of the outer thread in the stem. In the former, the inner threads on the stem unite in a swell or boss near the bowl or fork; while no such swell or boss is found in the latter. It is also to be noted, that, in the former the outline at the end of the enlarged end of the handle has the form of a portion of a trefoil; while, in the latter, it has the form of a Gothic arch; and that, in the former, the surface of the enlarged end between the threads is swelled between the shoulders, and such swell is gradually flattened towards the widest part of the handle, so that the swell at such part is substantially different in appearance from the swell at the shoulders; while, in the latter, the swell is substantially the same from the shoulders to the broadest part of the enlarged end.

"The differences thus observed between the plaintiffs' design and the White design of 1867, exist also between the plaintiffs' design and the White design of 1868. In addition, in the plaintiffs' design, the contour of the enlarged end of the handle spreads outward progressively from the shoulders until the widest part of the handle is reached; while, in the White design of 1868, the sides of the enlarged end turn inward for a distance after leaving the shoulder and then spread outwards to the widest part.

"From the comparisons thus instituted, it appears that the plaintiffs' design and the White design of 1867, are, in what has been called outline, very much alike, while they differ from each other in a marked manner in what has been called ornamentation, while the plaintiffs' design and the White design of 1868 differ from each other in a marked manner, both in outline and in ornamentation; and that the two White designs differ from each other in outline in a marked manner, while they scarcely differ at all from each other in ornamentation.

"There can be no doubt, in the proofs, that the plaintiffs' design is a very meritorious and salable one. The entire strength of their case, on the question of infringement, is put on the claimed ground, that the resemblance between their design and each of the two designs of White is such as to mislead ordinary purchasers and casual observers, and to induce them to mistake

Diagrams.

GORHAM CO.          WHITE, 1867.          WHITE, 1868.

the one design for the other. It is argued that the merit of a design appeals solely to the eye, and that if the eye of an ordinary observer cannot distinguish between two designs, they must in law be substantially alike. In the present case, it is asserted that the eye of the ordinary observer is and will be deceived when looking at a handle of the plaintiffs' design and a handle of either of the designs of White, because, in addition to the resemblance in contours, the handles have all of them a threaded pattern around the edges, and small knobbed ornamentations at the shoulders, and small knobbed ornamentations near the end, and a pointed projection at the end, and that the general effect on the eye of the ordinary observer is not and will not be modified by the differences which have been pointed out.

"It is impossible to assent to the view, that the test in regard to a patent for a design is the eye of an ordinary observer. The first question that would arise, if such a test were to be admitted, would be, as to what is meant by 'an ordinary observer,' and how he is to exercise his observation   One of the witnesses for the plaintiffs[*] testifies that the plaintiffs' design and the White design of 1867 are sufficiently alike to mislead ordinary purchasers as to their identity, but not on a second examination; and that if an ordinary purchaser did not have before him a sample of the plaintiffs' design, he would be apt to consider the White design of 1867 to be the same pattern as the plaintiffs' design. Another of the witnesses[†] for the plaintiffs states that he does not think that an ordinary observer would notice any difference between the two designs on a casual observation. The expert[‡] examined for the plaintiffs testifies that, in saying that the White designs are substantially identical with the plaintiffs' design, he means such an identity as would deceive him when going as a purchaser to ask for one spoon and being shown another; and that when he saw articles of the plaintiffs' design and of the White design of 1867, separately, he took them to be of the same design, until he laid them side by side and compared them minutely.

"The same principles which govern in determining the question of infringement in respect to a patent for an invention connected with the operation of machinery, must govern in deter-

---

[*] John Gleave, *supra*, p. 515.          [†] J. T. Bailey, *supra*, p. 514.
[‡] Henry B. Renwick, *supra*, p. 516.

mining the question of infringement in respect to a patent for a design. A design for a configuration of an article of manufacture is embraced within the statute as a patentable design, as well as a design for an ornament to be placed on an article of manufacture. The object of the former may solely be increased utility, while the object of the latter may solely be increased gratification to a cultivated taste addressed through the eye. It would be as reasonable to say that equal utility should be the test of infringement in the first case, as to say that equal appreciation by the eye should be the test of infringement in the latter case. There must be a uniform test, and that test can only be, as in the case of a patent in respect to machinery, substantial identity, not in view of the observation of a person whose observation is worthless, because it is casual, heedless, and unintelligent, and who sees one of the articles in question at one time and place and the other of such articles at another time and place, but in view of the observation of a person versed in the business of designs in the particular trade in question—of a person engaged in the manufacture or sale of articles containing such designs—of a person accustomed to compare such designs one with another, and who sees and examines the articles containing them side by side. The question is not whether one design will be mistaken for another by a person who examines the two so carelessly as to be sure to be deceived, but whether the two designs can be said to be substantially the same when examined intelligently side by side. There must be such a comparison of the features which make up the two designs. As against an existing patented design, a patent for another design cannot be withheld because, to a casual observer, the general appearance of the latter design is so like that of the earlier one as to lead him, without proper attention, to mistake the one for the other. The same test must be applied on the question of infringement.

"Applying these principles to the evidence in this case, and comparing the designs of White with the plaintiffs' design, it is satisfactorily shown, by the clear weight of testimony, that the designs of White are not substantially the same as the plaintiffs' design. The strength of the testimony of the witnesses on the part of the plaintiffs themselves leads to this conclusion. The substance of the evidence of the most intelligent of them, persons in the trade, is merely to the effect that the White designs

are not substantially the same as the plaintiffs' design, but were intended to appear to be the same to an ordinary purchaser, and will so appear to him, but that a person in the trade will not be deceived, by the resemblance, into purchasing an article of the one design for an article of the other.

"A patent for a design, like a patent for an improvement in machinery, must be for the means of producing a certain result or appearance, and not for the result or appearance itself. The plaintiffs' patent is for their described means of producing a certain appearance in the completed handle. Even if the same appearance is produced by another design, if the means used in such other design to produce the appearance are substantially different from the means used in the prior-patented design to produce such appearance, the later design is not an infringement of the patented one. It is quite clear, on a consideration of the points of difference before enumerated, between the plaintiffs' design and the designs of White, that each of the latter is substantially different from the former in the means it employs to produce the appearance it presents. Such is the undoubted weight of the evidence, and such is the judgment of the court."

The Circuit Court accordingly decreed a dismissal of the bill, and from that decree the Gorham Company brought the case here, where, after an elaborate and interesting argument by *Messrs. C. M. Keller and C. F. Blake, for the appellants, and Messrs. G. Gifford and W. C. Witter, contra,*—

Mr. Justice STRONG delivered the opinion of the court.

The sole question is one of fact. Has there been an infringement? Are the designs used by the defendant substantially the same as that owned by the complainants? To answer these questions correctly, it is indispensable to understand what constitutes identity of design, and what amounts to infringement?

The acts of Congress which authorize the grant of patents for designs were plainly intended to give encouragement to the decorative arts. They contemplate not so much utility as appearance, and that, not an abstract impression, or picture, but an aspect given to those objects mentioned in the

acts. It is a new and original design for a manufacture, whether of metal or other material; a new and original design for a bust, statue, *bas relief*, or composition in *alto* or *basso relievo;* a new or original impression or ornament to be placed on any article of manufacture; a new and original design for the printing of woollen, silk, cotton, or other fabrics; a new and useful pattern, print, or picture, to be either worked into, or on, any article of manufacture; or a new and original shape or configuration of any article of manufacture—it is one or all of these that the law has in view. And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form. The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. It therefore proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them. Manifestly the mode in which those appearances are produced has very little, if anything, to do with giving increased salableness to the article. It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly, but, in whatever way produced, it is the new thing, or product, which the patent law regards. To speak of the invention as a combination or process, or to treat it as such, is to overlook its peculiarities. As the acts of Congress embrace only designs applied, or to be applied, they must refer to finished products of invention rather than to the process of finishing them, or to the agencies by which they are developed. A patent for a product is a distinct thing from a patent for the elements entering into it, or for the ingredients of which it is composed, or for the com-

bination that causes it.   We do not say that in determining whether two designs are substantially the same, differences in the lines, the configuration, or the modes by which the aspects they exhibit are not to be considered; but we think the controlling consideration is the resultant effect.  Such was the opinion of Lord Chancellor Hatherly in *McCrea* v. *Holdsworth*.*   That was a suit to restrain an infringement of a design for ornamenting a woven fabric.   The defence was a denial that the design used by the defendants was the same as that to which the plaintiff was entitled.   The ornament on both was, in part, a star, but on one it was turned in an opposite direction from that in the other; yet the effect of the ornament was the same to the eye.   The Lord Chancellor held the important inquiry was whether there was any difference in the effect of the designs, not whether there were differences in the details of ornament.  "If," said he, "the designs are used in exactly the same manner, and have the same effect, or nearly the same effect, then, of course, the shifting, or turning round of a star, as in this particular case, cannot be allowed to protect the defendants from the consequences of the piracy."   This seems most reasonable, for, as we have said, it is the effect upon the eye which adds value to articles of trade or commerce.   So in *Holdsworth* v. *McCrea*,† Lord Westbury said, "Now, in the case of those things in which the merit of the invention lies in the drawing, or in forms that can be copied, the appeal is to the eye, and the eye alone is the judge of the identity of the two things.   Whether, therefore, there be piracy or not is referred to an unerring judge, namely, the eye, which takes the one figure and the other figure, and ascertains whether they are or are not the same."   This was said in a case where there was nothing but a drawing of the design.

We are now prepared to inquire what is the true test of identity of design.   Plainly, it must be sameness of appearance, and mere difference of lines in the drawing or

* 6 Chancery Appeal Cases, Law Reports, 418.

† 2 Appeal Cases, House of Lords, 388.

sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity. An engraving which has many lines may present to the eye the same picture, and to the mind the same idea or conception as another with much fewer lines. The design, however, would be the same. So a pattern for a carpet, or a print may be made up of wreaths of flowers arranged in a particular manner. Another carpet may have similar wreaths, arranged in a like manner, so that none but very acute observers could detect a difference. Yet in the wreaths upon one there may be fewer flowers, and the wreaths may be placed at wider distances from each other. Surely in such a case the designs are alike. The same conception was in the mind of the designer, and to that conception he gave expression.

If, then, identity of appearance, or (as expressed in *McCrea v. Holdsworth*) sameness of effect upon the eye, is the main test of substantial identity of design, the only remaining question upon this part of the case is, whether it is essential that the appearance should be the same to the eye of an expert. The court below was of opinion that the test of a patent for a design is not the eye of an ordinary observer. The learned judge thought there could be no infringement unless there was "substantial identity" "in view of the observation of a person versed in designs in the particular trade in question—of a person engaged in the manufacture or sale of articles containing such designs—of a person accustomed to compare such designs one with another, and who sees and examines the articles containing them side by side." There must, he thought, be a comparison of the features which make up the two designs. With this we cannot concur. Such a test would destroy all the protection which the act of Congress intended to give. There never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them. No counterfeit bank note is so identical in appear-

ance with the true that an experienced artist cannot discern a difference. It is said an engraver distinguishes impressions made by the same plate. Experts, therefore, are not the persons to be deceived. Much less than that which would be substantial identity in their eyes would be undistinguishable in the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give. It is persons of the latter class who are the principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be, if, for example, they are led to purchase forks or spoons, deceived by an apparent resemblance into the belief that they bear the "cottage" design, and, therefore, are the production of the holders of the Gorham, Thurber, and Dexter patent, when in fact they are not, the patentees are injured, and that advantage of a market which the patent was granted to secure is destroyed. The purpose of the law must be effected if possible; but, plainly, it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringement.

We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Applying this rule to the facts of the present case, there is very little difficulty in coming to a satisfactory conclusion. The Gorham design, and the two designs sold by the defendant, which were patented to White, one in 1867, and the other in 1868, are alike the result of peculiarities of outline, or configuration, and of ornamentation. These make

up whatever is distinctive in appearance, and of these, the outline or configuration is most impressive to the eye. Comparing the figure or outline of the plaintiffs' design with that of the White design of 1867, it is apparent there is no substantial difference. This is in the main conceded. Even the minor differences are so minute as to escape observation unless observation is stimulated by a suspicion that there may be diversity. And there are the same resemblances between the plaintiffs' design and the White design of 1868, and, with a single addition, the minor differences are the same. That additional one consists in this. At the upper part of the handle, immediately above the point where the broader part widens from the stem with a rounded shoulder, while the external lines of both designs are first concave, and then gradually become convex, the degree of concavity is greater in the White design. How much effect this variance has must be determined by the evidence. In all the designs, the ornament is, in part, a rounded moulding or bead along the edge with scrolls at the shoulders and near the top. There are, however, some diversities in this ornament, which are discoverable when attention is called to them. In the plaintiffs' the bead is interrupted at the shoulders and at the tip by the scrolls, while in both the designs of White it is continued unbroken around the scrolls. In the plaintiffs' the scrolls turn inward at the shoulders and outward at the tip. In the White design they turn inward both at the shoulders and at the upper end. But there are the same number of scrolls in all the designs, and they are similarly located, all having the appearance of rosettes. In all the external bead is formed by a depressed line running near the edge of the handle, but in the plaintiffs' there is an inner line, making a second very thin bead, nearly parallel to the external bead common to them all. In the White designs this inner line is wanting on the stem of the handle, though not on the broad part, but as the single line is wider it presents much the same appearance as it would present if divided into two. There are other small differences which it is needless to specify.

What we have mentioned are the most prominent. No doubt to the eye of an expert they are all real. Still, though variances in the ornament are discoverable, the question remains, is the effect of the whole design substantially the same? Is the adornment in the White design used instrumentally to produce an appearance, a distinct device, or does it work the same result in the same way, and is it; therefore, a colorable evasion of the prior patent, amounting at most to a mere equivalent? In regard to this we have little doubt, in view of the evidence. Both the White designs we think are proved to be infringements of the Gorham patent. A large number of witnesses, familiar with designs, and most of them engaged in the trade, testify that, in their opinion, there is no substantial difference in the three designs, and that ordinary purchasers would be likely to mistake the White designs for the "cottage" (viz., that of the plaintiffs). This opinion is repeated in many forms of expression, as, that they are the same pattern; that the essential features are the same; that seven out of ten customers who buy silverware would consider them the same; that manufacturers as well as customers would consider them the same; that the trade generally would so consider them; that, though there are differences, they would not be noticed without a critical examination; that they are one and the same pattern, &c., &c. This is the testimony of men who, if there were a substantial difference in the appearance, or in the effect, would most readily appreciate it. Some think the White designs were intended to imitate the other, and they all agree that they are so nearly identical that ordinary purchasers of silverware would mistake one for the other. On the other hand a large number of witnesses have testified on behalf of the defendant that the designs are substantially unlike, but when they attempt to define the dissimilarity they specify only the minor differences in the ornamentation, of which we have heretofore spoken. Not one of them denies that the appearance of the designs is substantially the same, or asserts that the effect upon the eye of an observer is different, or that ordinary purchasers, or

even persons in the trade, would not be led by their similarity to mistake one for another. Their idea of what constitutes identity of design seems to be that it is the possibility of being struck from the same die, which, of course, cannot be if there exists the slightest variation in a single line. They give little importance to configuration, and none to general aspect. Such evidence is not an answer to the complainants' case. It leaves undisputed the facts that whatever differences there may be between the plaintiffs' design and those of the defendant in details of ornament, they are still the same in general appearance and effect, so much alike that in the market and with purchasers they would pass for the same thing—so much alike that even persons in the trade would be in danger of being deceived.

Unless, therefore, the patent is to receive such a construction that the act of Congress will afford no protection to a designer against imitations of his invention, we must hold that the sale by the defendant of spoons and forks bearing the designs patented to White in 1867 and 1868 is an infringement of the complainants' rights.

DECREE REVERSED and the cause remitted with instructions to enter a decree in ACCORDANCE WITH THIS OPINION.

Justices MILLER, FIELD, and BRADLEY dissented.