SMITH v. STEWART et al.

(Circuit Court, E. D. Pennsylvania. April 24, 1893.)

No. 11.

1. DESIGN PATENTS—NOVELTY AND INVENTION—NEW APPEARANCE.
The invention and novelty required in the case of design patents is very small and of low order, and differs from the novelty and invention required for mechanical patents. All that the statute requires in the case of designs is the production of a new and pleasing design which may add value to the object for which it was intended.

2. SAME—MASONIC DESIGN FOR DECORATING RUGS.
Design patent No. 18,703, granted October 23, 1888, to William T. Smith, for a masonic design for decorating rugs, consisting of the selection of certain masonic symbols, and the grouping thereof in an orderly and tasteful manner, so as to form what many would consider an attractive panel, large enough to cover the face of the rug, involves novelty and invention, and is valid.

3. SAME — INVENTOR — CONCEPTION OF IDEA — ADJUSTMENT OF DETAILS BY DRAUGHTSMAN.
An allegation that a design was invented by the patentee's draughtsman, and not by the patentee, is not sustained where it appears that the patentee conceived the idea and manner of carrying it out, although the draughtsman applied the idea and made the drawing.

4 SAME—INFRINGEMENT—RUGS.
Design patent No. 18,703, for a design for decorating rugs consisting of a panel, on which certain masonic symbols are arranged, with a border of oak leaves, is infringed by the manufacture of rugs which follow the patented design literally, except the border, the distinguishing and dominating feature of the patented design being the panel.

5. SAME—INFRINGEMENT—AMOUNT RECOVERABLE.
In a suit for infringing a design patent for rugs, it appeared that the defendants had copied the plaintiff's design; that the rugs manufactured by the plaintiff were marked as the statute requires; and that from the one copied the mark had been removed. One of the defendants testified that he was not aware of the patent, and that he inquired of the designer of the copy about it, and was told that there was no patent. At that time the patent had not issued, but had been applied for. The defendants

knew that the design was the complainant's, and that he alone was using it. They also knew that the designer of the copy could not obtain rugs from the complainant. *Held,* that it was the duty of the defendants, before manufacturing, to inquire of the complainant as to the existence of the patent, and that complainant was entitled to judgment for $250, under the act of congress of February 4, 1887, entitling the owner of a design patent to recover that sum.

In Equity. Bill by William T. Smith against John Stewart and others for the infringement of design patent No. 18,703. Decree for complainant.

Joseph C. Fraley, for complainant
Hector T. Fenton, for defendants.

BUTLER, District Judge. The suit is to recover damages for infringement of design patent No. 18,703, granted the complainant October 23, 1888. The defenses are, substantially, want of novelty and invention; failure to mark the rugs as required by law; and noninfringement. As respects the third—alleged failure to mark —no room exists for doubt; the proofs show compliance with the statute.

If the question what constitutes novelty, and invention, in the sense of the statute here involved, was now raised for the first time, I might possibly agree with the defendants. It has, however, been raised many times heretofore; and while the decisions are substantially harmonious, the expressions of commissioners and judges regarding it are not. I have examined the cases, but do not propose to discuss them. The application of expressions found in a few of them would, I think, overturn a majority of design patents granted, and many of those which have been sustained by the courts. It would seem absurd to say that the designs covered by these patents, generally, exhibit the exercise of "inventive genius," as the term is commonly applied to mechanical inventions. Turning, for example, to the spoon and fork handle design in the hotly-contested case of Gorham Co. v. White, 14 Wall. 511, nothing more is found than the skillful use of common scroll work, exhibiting little, if anything, more than good taste; and yet the question of novelty and invention was not even raised; the same may be said of the designs involved in a majority of reported cases. Some of the rules applied to mechanical patents are wholly inapplicable to those for designs. As said by the supreme court in Gorham Co. v. White: "To speak of the invention as a combination  *  *  *  or to treat it as such is to overlook its peculiarities." Such designs generally, if not uniformly, contain nothing new except the appearance presented to the eye, by arrangement of previously existing material; such as lines, scrolls, flowers, leaves, birds, and the like. The combination, where several separate objects are employed, need not be, and cannot be, such as this term signifies when applied to machinery—"the parts coacting to produce a new and useful result" in the sense there contemplated. The object sought in a design is a new effect upon the eye alone—a new appearance; and the several parts need not have any other connection than is necessary to accomplish

this result. As the supreme court said in the case just cited: "It is the appearance simply, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law of design patents deems worthy of recompense. This appearance may be the result of peculiarity of configuration, of one element alone, or of several conjointly; but, in whatever way produced," it is the new appearance only which the law regards. The invention in a majority of patented designs is very small, and of a low order. All the statute, as commonly interpreted, requires is the production of a new and pleasing design, which may add value to the object for which it is intended. The invention consists in the conception and production of this, however simple it may be. As said in Robinson on Patents: (page 293) "The essence of a design resides in the idea of that configuration or ornamentation which constitutes the new appearance given." And again, as said in Untermeyer v. Freund, 37 Fed. Rep. 342: "If a design presents a different impression upon the eye from anything which preceded it, if it proves to be pleasing and popular, if it creates a demand for the article to which it is applied, though it be simple and does not show a wide departure from other designs, it will be protected." See Simpson v. Davis, 20 Blatchf. 413, 12 Fed. Rep. 144. See, also, in this connection, Wood v. Dolby, 7 Fed. Rep. 475, where a design which consisted of a bird upon a twig, with various unconnected accessories, was held to be new and patentable, although bird designs, of slightly different appearance, were found to be old.

In the case before us the object sought was a masonic design for decorating rugs, by means of which they might be made popular with members and friends of that and similar orders. He therefore selected certain masonic symbols, and grouped them in an orderly and tasteful manner so as to form what many would consider an attractive panel, large enough to cover the face of the rug. He succeeded in his object; the rug became popular, and met with active demand. The invention consisted in the conception of this design and carrying it into practical effect.

The allegation that the invention was made by the patentee's draughtsman is not sustained. The patentee conceived the idea and the manner of carrying it out. It was not necessary that he should do the drawing. Sparkman v. Higgins, 1 Blatchf. 206.

Did the defendants infringe? They copied the rug literally, except the border. In the printed drawings which accompany the patent the border is so imperfect that the peculiar character of its figures cannot be ascertained. The rug copied was manufactured under the patent with an oak-leaf border, which the proofs show corresponds with the photograph of the original design deposited in the patent office. I do not, however, deem this important. The distinguishing and dominating feature of the design is the panel. A common observer would not discover any difference between the plaintiff's and defendants' rugs, granting that the borders are dissimilar. As said in Gorham Co. v. White, this is the test. The difference between the spoon and fork handles there involved, was more likely to be seen than the difference between these rugs, and

yet the defendant was held to have infringed. The complainant must therefore have a decree. But for what? In Schofield v. Dunlop, 42 Fed. Rep. 323, this court said the provision of the statute of February 4, 1887, (Stat. U. S. 1885–87, c. 105,) entitling the owner of a design patent infringed to recover $250, applies only where the infringement is willful—that the sum is a penalty inflicted for such infringement. What was thus said, however, was unnecessary to a decision of the case; and should therefore have been omitted. There was no evidence to repel the presumption that the defendant was aware of the patent. The subject was discussed at length by counsel, and the court was thus led to speak of it. Whether the view expressed was well founded need not be considered here. It appears from the report of Pirkl v. Smith, 42 Fed. Rep. 410, decided about the same time in New York, that the court there expressed a different view. The question, however, was not involved there either; and the decisions in the two cases are harmonious. In the latter, as in the former, the presumption that the patented articles were marked, and that the respondent had therefore implied notice, existed. In neither was there proof that he had not. The court, in the New York case, says the defendant "denies" notice; but this means simply that the answer denies it; not that the proofs do. As before stated, this case does not call for a decision of the question. The defendants cannot be regarded as innocent or unwitting infringers. The proofs show that the rugs were marked as the statute requires. From the one copied the mark had been removed. A member of the defendant firm testifies that he was unaware of the patent, and inquired of McElroy, who designed the copies, about it, and was told there was no patent. At that time the patent had not issued; but an application was pending, and it did issue before any of the rugs were delivered, and before a large part of them were made. The defendants knew, as is admitted, that the design was the complainant's, and that he alone was using it. They evidently suspected, at least, that they could not properly use it. The conversation with McElroy indicates this. They had sufficient knowledge, therefore, to put them on inquiry. What McElroy said was insufficient to excuse them. Inquiry of Mr. Smith, or of others who might be expected to know, would have removed all doubt. McElroy was not disinterested; he was unable to obtain the rug from Smith, as he told Stewart, and therefore sought his aid. Under the circumstances, it was the defendants' duty to make further inquiry. The inference is justifiable that they desired the employment, and chose to take the risk. The plaintiff must therefore have a decree for the sum named.