SCOFIELD et al. v. BROWNE.

(Circuit Court of Appeals, Third Circuit. December 11, 1907.)

No. 35.

1. PATENTS—DESIGNS—EVIDENCE OF PATENTABLE NOVELTY.
    The fact that articles when made after a patented design were more salable and in greater demand is evidence that such design possesses the qualities of novelty and attractiveness to the eye, which rendered it patentable.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 52.

    Utility, extent of use, and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

2. SAME—INFRINGEMENT—ORNAMENTAL HEAD FOR BROOCHES.
    The Frenot design patent No. 35,922 for a design for an ornamental head for brooches, etc., discloses patentable novelty. Also *held* valid as against the defense of public use for more than two years and infringed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Louis M. Sanders, for appellants.

H. V. Osborne, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

DALLAS, Circuit Judge. This is an appeal from a decree for the complainant in a suit founded upon design patent No. 35,922, dated May 27, 1902, issued to Louis D. Frenot, assignor, etc. In the specification as at first presented, the leading or material feature of the design was said to consist "in the representation, in relief, of the face or head of an animal in front view, the mouth being opened to expose the teeth and the long hair at the cheeks being combed outwardly"; and to this was added the statement that "the animal is preferably a lion." The design as thus described was rejected by the Patent Office "as offering nothing patentable, in view of the various lions' heads shown in English heraldry"; and the applicant, to escape the imputation that this child of his invention was related to such fantasies, submitted the substituted specification upon which the patent in suit was allowed and issued, viz.:

"Figure 1 is a front elevation, and Fig. 2 is a side elevation, of an ornamental head for pins, brooches, etc., of my new design. As shown in the drawings, the leading or material feature of my design consists in an ornamental head for brooches, scarf pins, and similar articles, having at its front the

158 F.—20

shape of the forward portion of a carnivorous animal's head, with mouth open to expose the teeth, and long hair at the cheek spread outwardly and displayed as a broad base, the back of the ornamental head being plane. In said drawings, 'a' indicates an ornamental head of my new design, having at its front the configuration of the forward portion of the head of a carnivorous animal, with open mouth, 'b,' displaying teeth, 'c, c.' At the cheeks is long hair, 'd,' combed outward and displayed as a base, and beyond this is a background of further diverging ray-like members, 'e.' The back of the ornamental head is plane, as at 'f.' Having thus described the invention, what I claim as new is: The design for an ornamental head for brooches, scarf pins, and similar articles, as herein shown and described."

Figure 1 of the drawings is here reproduced:

Fig. 1.

It is not for us to say that this "most delicate monster" does not "please the eye of the beholder," for the proofs show that it has enhanced the salable value and enlarged the demand for the trinkets it was intended to adorn. Walker on Patents, § 22. And as to infringement there can be no reasonable doubt. The head of the defendants does not materially differ from that of the patent, being distinguishable from it only by the absence of the ray-like members, "e"; and we cannot suppose that the removal of these appendages was at all likely to be observed by an ordinary purchaser. Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731. The two designs are certainly very much alike in general appearance. Each is "an ornamental head," and both, if either, may be regarded as that of "a carnivorous animal"; and each has the mouth open to expose the teeth, and "like the toad, ugly and venomous, wears yet a precious jewel in his head." The only difference worthy of mention, as has been noted, is in what may be called the whisker portion of the face, and it is not possible to believe that the intention of the defendants in creating this difference, was to make a design "so various that the mind of desultory man, studious of change and pleased with novelty, might be indulged."

It has been argued that the patent in suit is invalid, because, as contended, the design patented had been for more than two years in public use when the application was filed; but upon this subject we do not deem it necessary to add anything to what was said by the learned judge of the court below. After independent consideration of the proofs, we agree with him that this defense was not made out, and think that his conclusion in this regard was amply vindicated in his opinion, as follows:

"The alleged invalidity of the patent is based on the contention that the design was in public use more than two years prior to the filing of the application for the patent. The application was filed February 8, 1902. The patent was granted to the complainant as assignee of Louis D. Frenot. Frenot, who was offered as a witness by the complainant, stated on cross-examination

that he thought he sold the design to the complainant in the fall of 1899, and that shortly thereafter the complainant began to manufacture articles from the design and to put them on the market. Indeed, he said he was sure that he turned over his first mold to the complainant in the fall of 1899. The complainant himself also testified that he thought he purchased the mold from Frenot in the fall of 1899. If there is no mistake in this testimony it follows, as a matter of course, that the patent is invalid. But I think these witnesses were mistaken. They were both testifying from memory, and without the aid of books or other memoranda. The complainant was subsequently recalled, and said that after giving his first testimony he had examined his books and found that the first sale of any article made from Frenot's design was on September 22, 1900; that the first pattern of the design was made on July 12, 1900; and that the first work ever done by Frenot for him was on June 2, 1900. Frenot, in his testimony, said that at the time he sold his invention to the complainant he was working for the complainant. Esther Hargreaves was also called as a witness. She is the complainant's bookkeeper, stenographer, and general office clerk. She in all respects corroborates the complainant as to the facts disclosed by his books. I am satisfied that Frenot went to work for the complainant about June 2, 1900, and that the design was made by him after that date. Consequently, the defense of invalidity is not supported by the proofs."

The decree is affirmed.