Modified.

## In re STAUN.

### Patent Appeal No. 2797.

Court of Customs and Patent Appeals.
Nov. 27, 1931.

M. S. Meem, of Washington, D. C. (James Atkins, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant's application for a design patent for a textile fabric was refused by the Examiner, which refusal was affirmed by the Board of Appeals of the United States Patent Office. From that decision, appellant has appealed to this court.

The references relied upon are: Maisch-Bitschenauer, Design 43986, May 13, 1913; Schurman, Design 68499, October 13, 1925; Tiedemann, Design 75880, July 24, 1928.

The design comprises stems, buds, and leaves of vines so arranged in diagonal lines and crossing each other that diamond-shaped spaces are formed between the crossing vines. Into each of the diamond-shaped spaces is placed what is said to be a representation of a cosmos blossom, which is connected by a stem to the vine on' one side of the diamond-shaped space.

The patent to Maisch-Bitschenauer discloses diagonal lines of vines forming diamond-shaped spaces, and in each space there is a representation of two flowers, each supported by a stem. Flowers are also shown at the intersections of the crossing stems. The blossoms shown are not materially different from the one at bar.

In Schurman, stems and blossoms are arranged in lines and cross each other so as to form the same kind of diamond-shaped space as is at bar. In the center is a single blossom somewhat different from the blossom at bar.

The patent to Tiedemann shows a blossom quite similar to the blossom in appellant's design, but in Tiedemann there are no diagonal lines forming the diamond-shaped spaces.

Appellant's design may be distinguished by the ordinary observer from any of the references if the four designs are closely scrutinized, and yet it is at once apparent that the broad idea of intersecting diagonal lines so as to form diamond-shaped spaces and then placing flowers in such spaces is old in the design patent art.

The Patent Office tribunals rejected appellant's design, for the reason that there was no invention in what he had done.

Appellant complains that:

"The Examiner and the Board not being able to find a design like appellant's, have taken several patented designs and, by

combining them, have sought to show that it did not amount to invention to produce appellant's design.

"The courts have looked with disapproval on any attempt to dissect a design and reject it piecemeal," and cites numerous authorities.

▉ The well-settled principle of law which appellant invokes is not inconsistent with the action taken by the tribunals below. It is true that the design must be looked to as a whole, and the mere fact that the different items that compose it may be found separately in other designs is not of itself sufficient ground for rejection. But the test is, as we see it, when the design as a whole is considered in the presence of the prior art, does the new creation amount to invention? Design patents are granted to inventors for reasons which should not be confused with the reasons for granting registration of trade-marks.

It seems to be the thought of appellant that for every design, the details of which cannot be shown in the prior art, and which by close examination may be readily distinguished from every single design in the prior art, a patent should issue.

The correct rule is laid down in Eloesser-Heynemann Co. v. Bayly-Underhill Mfg. Co., 29 F.(2d) 305, 307, in which the District Court for Colorado said: "The case of King Ventilating Co. v. St. James Ventilating Co., 26 F.(2d) 357, recently decided by the Court of Appeals of this circuit, is controlling in many important features of the case at bar. A design patent for a ventilator was adjudged invalid. It was there held that a difference in amount of flare, or other differences in dimension, would not avoid anticipation; that the exercise of inventive faculty was as essential to a design patent as to a mechanical patent; that the combination of an old flared base to an old superstructure was not invention; that popularity and successful sales are not enough to sustain a patent. · The facts presented by that opinion are perhaps not as difficult as those here presented, but the principles are sound and controlling, and lead me to the conclusion that no inventive genius was required, in the creation of plaintiff's design."

In the quite recent case of Robertson v. Cooper, 46 F.(2d) 766, 768, where the Patent Office's rejection of an application for a design patent for a font of type was approved by the Circuit Court of Appeals of the Fourth Circuit, the court, after emphasizing the fact that invention was required in a design patent, said: "It is apparent that the design of any one of these groups would suggest to a skilled workman the design of all the others of the same group, and such a workman, having before him the word 'Asbestone,' could, without any inventive ingenuity whatever, by exercise of a high degree of skill only, construct the entire font of patent. * * * " See, also, Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731.

It is argued by appellant, in urging the patentability of his design, that it "has gone into extensive use and been proved valuable."

▉ Popularity and successful sales alone are not enough to sustain a patent. Eloesser-Heynemann Co. v. Bayly-Underhill Mfg. Co., supra; In re Earl Ackenbach, 45 F.(2d) 437, 18 C. C. P. A. 769; In re Alfred L. Phelps & Arthur J. Carter, 47 F.(2d) 387, 18 C. C. P. A. 1036.

The decision of the Board of Appeals is affirmed.

Affirmed. ·