983 F.2d 1087
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Natal PEPITONE, Plaintiff-Appellant,
v.
AMERICAN STANDARD, INC., Defendant-Appellee.
 No. 92-1284.
 United States Court of Appeals, Federal Circuit.
 Nov. 17, 1992.
 
 Before RICH, PLAGER and CLEVENGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Natal Pepitone, a pro se plaintiff, filed a complaint against American Standard, Inc. containing several general allegations, including misappropriation of his invention of a water temperature gauge, and interference and infringement of his design patent. Pepitone appeals a decision of the U.S. District Court for the Southern District of New York, No. 89 Civ. 0189 (S.D.N.Y. Oct. 1, 1991) that granted American Standard's motion for summary judgment on the grounds that the court lacked subject matter jurisdiction. We affirm on different grounds.
 
 BACKGROUND
 
 2
 In 1984, Natal Pepitone sent his idea of a shower temperature finder to American Standard to be evaluated. Before they would consider his idea, however, they required him to sign their standard waiver of confidentiality agreement that advised Pepitone that (1) American Standard could not guarantee that his idea would remain secret, and (2) because American Standard's research division could be working on similar ideas, Pepitone would have to rely on his own patents to protect his rights. Pepitone v. American Standard, Inc., No. 89 Civ. 0189, slip op. at 3 (S.D.N.Y. Oct. 1, 1991) (Memorandum Opinion and Order).
 
 
 3
 After Pepitone signed the agreement, American Standard determined that it had no interest in his idea. In October 1986 Pepitone sent a second suggestion to American Standard for a shower and bath temperature finder comparable to his 1984 device. After Pepitone signed another waiver of confidentiality agreement, American Standard advised him that it had no interest in this device. On October 30, 1986 Pepitone applied for a design patent on his water temperature gauge, and received Design Patent No. D301,842 on June 27, 1989.
 
 
 4
 According to the district court, American Standard's German subsidiary, Ideal-Standard GmbH, had begun development in January 1982 of a device that would measure water temperature, and display the temperature digitally on a faucet head. Id. at 1-2. Ideal-Standard developed a prototype by March 1983, id. at 2, and American Standard filed a German patent application for the device on March 4, 1985. They applied for a U.S. utility patent on March 4, 1986, using the priority date of the German application, and were granted Patent No. 4,682,626 on July 28, 1987.
 
 
 5
 Pepitone filed his complaint against American Standard on January 11, 1989. The complaint is confusing, and it is difficult to know exactly what he alleges. The trial judge treated it as asserting claims of interference with and infringement of Pepitone's design patent. American Standard moved to dismiss the complaint for lack of subject matter jurisdiction. The district court determined that the complaint was insufficient to confer jurisdiction, but allowed Pepitone to file an amended complaint on March 17, 1990. On April 13, 1990 American Standard again moved to dismiss for lack of jurisdiction. After additional submissions from both parties, the court converted American Standard's motion to dismiss into a motion for summary judgment.
 
 
 6
 On October 1, 1991 the district court granted summary judgment to American Standard on the grounds that the court lacked subject matter jurisdiction over Pepitone's claims. The district court found that Pepitone could not allege an interference under 35 U.S.C. § 291 (1988) between his design patent and American Standard's utility patent because these two types of patents cannot possibly claim the same subject matter. Id. at 9. The court also found that Pepitone could not assert an infringement claim against American Standard's product under 35 U.S.C. § 281 (1988) because "an ordinary observer would not regard the two designs as substantially the same, and accordingly be deceived into purchasing one 'supposing it to be the other.' " Id. at 8. The court "expresse[d] no view" regarding "such claim as Pepitone may have under common law in the state court." Pepitone, No. 89 Civ. 0189, slip op. at 1 (S.D.N.Y. Oct. 9, 1991) (Judgment).
 
 DISCUSSION
 
 7
 Design patents can only claim ornamental designs, see 35 U.S.C. § 171 (1988), and cannot include claims to the structural or functional aspects of the article or device. 37 C.F.R. § 1.153(a); Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188 (Fed.Cir.1988). Utility patents, on the other hand, claim a process, machine, manufacture, or composition of matter. See 35 U.S.C. § 101 (1988). Since interfering patents must claim the same subject matter, Advance Transformer Co. v. Levinson, 837 F.2d 1081, 1083 (Fed.Cir.1988), we agree with the trial court that a design patent and a utility patent cannot interfere because they cannot claim the same subject matter. Thus, because Pepitone cannot have asserted a non-frivolous interference claim, the court correctly concluded that it lacked jurisdiction. See Bante v. Merit Sys. Protection Bd., 966 F.2d 647, 649 (Fed.Cir.1992).
 
 
 8
 There was, however, jurisdiction on the infringement issue. While the court incorrectly dismissed for lack of jurisdiction, it did address the merits of the infringement issue. We agree with the court that the product disclosed in American Standard's patent does not infringe Pepitone's design patent because the two designs are not substantially similar. Lee, 838 F.2d at 1187-88 (citing Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 528 (1872)). Although normally a claimed design is compared to the actual product, absent Pepitone's objection in this case it was permissible for the court to treat the American Standard product as that disclosed in its patent. Proper disposition of this claim would therefore have been under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.
 
 
 9
 Although the district court did not address Pepitone's state law claims, we interpret the court to have exercised its discretion to decline to hear these claims. See Verdegaal Bros., Inc. v. Union Oil Co., 750 F.2d 947, 950-51 (Fed.Cir.1984) (applying Ninth Circuit precedent); see 28 U.S.C. § 1338(b) (1988).
 
 
 10
 The language in Pepitone's complaint alleging that American Standard "turned around and filed a patent application in German & the United States on my disclosure ... Congress has signed a bill into law to protect the rights of the first inventor" could be interpreted as a claim for prior or joint inventorship. Pepitone, slip op. at 5-6 (S.D.N.Y. Oct. 1, 1991). Although the district court did not specifically address this claim, we find no reversible error in its failure to do so. Absent sufficient allegations from Pepitone to establish co-inventorship, see Havoco of Am., Ltd. v. Shell Oil Co., 626 F.2d 549, 553-54 (7th Cir.1980) (antitrust action dismissed for failure to sufficiently allege anticompetitive effects), Pepitone could not assert that he invented or contributed to the invention of American Standard's device, in view of the fact that Ideal-Standard had developed a prototype of its device in March 1983 before Pepitone sent his sketch to American Standard in 1984, and in light of the state of the art in 1984, which had progressed far beyond Pepitone's simple mechanical device to sophisticated electronic water temperature gauges.[1] Thus, Pepitone cannot state a claim upon which relief could be granted.
 
 
 11
 For the above reasons, we affirm the district court's judgment on different grounds.
 
 
 12
 No costs.
 
 
 
 [1]
 See, e.g., U.S. Patent Nos. 3,960,016 (water mixing valve with temperature sensor and temperature indicator, filed Feb. 14, 1974 and issued June 1, 1976), 4,406,398 (fluid temperature control with electronic temperature indicator and display, filed December 21, 1981 and issued Sept. 27, 1983), and 4,575,262 (electrically-powered temperature probe and LCD display mounted in faucet handle, filed November 22, 1983). Although the prior art is not formally before the court, we may take judicial notice of published patents under Fed.R.Evid. 201(b) & (c)