## WHITTALL v. LOWELL MANUF'G CO.

(Circuit Court, D. Massachusetts. March 31, 1897.)

1. DESIGN PATENTS—INTERPRETATION OF CLAIM—DRAWINGS AND DESCRIPTION.
   A claim reading, "In a design for a carpet, the body, A, substantially as shown," refers to the description as well as the drawing.
2. SAME—INTERPRETATION OF DRAWINGS—SHADES.
   Black and white drawings illustrating the designs in a design patent are to be considered as forms, into which may be filled a great variety of arrangements or effects of color or shades, without affecting the patented design.
3. SAME—DRAWINGS OF DESIGNS.
   The essentials of a design are what cannot be changed without destroying its characteristic appearance; and, where shading shown in the drawings may be reversed or removed without such effect, it must be considered as

but one of many permissible ways of treating the design, and therefore as an unnecessary addition to the conventional black and white outline drawing, which neither restricts nor enlarges the scope of the design.

4. SAME—INFRINGEMENT.
A design which imitates the figures of a patented design in their characteristic and important features, and produces the same general appearance, infringes, though the imitative figures are much smaller than those of the patent.

5. SAME—DESIGNS FOR CARPETS.
The Neil patent, No. 24,021, for a design for a carpet body, construed, and *held* infringed.

This was a suit in equity by Matthew J. Whittall against the Lowell Manufacturing Company for alleged infringement of a patent for a design for carpets.

Louis W. Southgate, for complainant.
Witter & Kenyon, for defendant.

BROWN, District Judge. This suit in equity is for infringement of design patent No. 24,021, to John B. Neil, dated February 12, 1895, for a design for carpets. It involves only the first claim, for a carpet body, and prays for an injunction and accounting and other relief incident to patent cases. The defense is noninfringement.

It is apparent from the evidence as to the origin of defendant's design, as well as from the exhibits and testimony relative thereto, that the designer of the defendant corporation, having before him a sample of carpet embodying substantially the complainant's patented design, undertook to produce a design closely resembling the complainant's, and that the defendant has produced and sold carpets substantially similar in appearance to those manufactured by complainant under the Neil patent. The defendant's witnesses admit imitation in respect to color and arrangement of shades, which is otherwise well proven; but the defendant claims that it has confined its imitation within lawful limits, and has adopted a configuration essentially different in detail and in general appearance from the Neil design, and that its carpets display not the complainant's design, but a design made under the protection of design patent No. 24,730, dated October 1, 1895, granted to E. G. Sauer, subsequent to the date of the Neil patent. The complainant contends that the Neil design primarily embodies a carpet of three shades: First, a plain background or groundwork of one shade; second, sharp division lines outlining the connected scrolls and ornamental work; third, a different shade forming the body or filling of the connected scrolls and ornamental work; and that it is "broadly new to design a carpet with a series of sharply outlined connected scrolls having sharply outlined ornamental work surrounding the same, said outlined scrolls and ornamental work having a third shade in the body thereof, and being arranged on a plain ground." It is difficult to avoid the conclusion that the argument that infringement is indicated by the adoption of three shades in defendant's carpets is based rather upon the special features of the manufactured carpets of the complainant and defendant than

upon the design patent. The claim in suit is, "In a design for a carpet, the body, A, substantially as shown." A claim in this form refers to the description as well as to the drawing. Dobson v. Carpet Co., 114 U. S. 439, 446, 5 Sup. Ct. 945. The description is, "The body, A, is decorated with a series of connected scrolls, surrounded by floral and ornamental work." The omission from the description of any reference to shades requires us to find in the drawing alone the three shades which complainant insists upon as a primary feature of his design. Upon examination of the drawing, I find no sufficient warrant for complainant's claim that it displays, as a characteristic or necessary feature of the design, scroll work of a shade distinct from the background and from the lines which outline the scroll. A portion of the scroll work is in solid black, without sharp division lines, though having a sharply defined outline; a portion is represented by the unprinted paper, which represents the background; a portion only displays a shade intermediate between the white background and the black scroll work and black dividing lines. If complainant may, without departing from the design shown in the drawing, use a single shade throughout the scroll work, as he has done in the manufactured carpets, he may equally well use either one of the three shades of the filling of the scrolls shown in the drawing; either the solid black of a portion of the scroll work, or the white of another portion, when the design will appear in two shades; or he may use the intermediate shade throughout, in which case only will three shades appear in the design. If shades are material and essential parts of the design, they must be the shades shown in the drawing; and both complainant's and defendant's carpets differ from the drawing in displaying scroll work of one shade of filling instead of three as shown in the drawing. But I think this departure immaterial, and also that adopting for the filling of the scrolls either the white of the background or the black of the outline would leave the design substantially unaffected, and therefore that three shades are accidental features of the drawing, and not primary features of the design. In order to sustain his contention that three shades are essential features, complainant is obliged to accept the consequences of this claim, and to hold that a black and white outline drawing like the drawing of the Sauer patent "illustrates a design embodying two shades simply, to wit, a background which is left plain or blank, and a tracery which outlines scroll and ornamental work of the same shade as the background." This seems a novel and extraordinary interpretation to put upon a drawing in black and white. Such drawings as illustrative of designs have acquired a conventional meaning entirely opposed to such view. It is implied in the Sauer drawing, as well as in other black and white drawings, that what is there displayed may be presented in a great variety of colors or shades. I think it very clear that, had all shades been omitted from the scroll work of the Neil patent, and had the drawing been made in black lines on white as in the Sauer design, the drawing would be properly interpreted as displaying a design which would be unaffected by shading either the back-

ground or the scroll work. A black and white drawing for a design is, so to speak, a blank form, into which may be filled a great variety of arrangements or effects of color or shades, without affecting the patented design. It is true that the complainant's drawing displays shading on a part of the scroll work. What does this shading signify? Without it, the design would imply or allow not only the treatment shown in the drawing, but also its reverse; i. e. shading the background instead of the scroll, or the addition of any number of shades, or any other treatment which did not change the configuration as shown. By adding one shade, and thus making the drawing show three shades, does complainant make that an essential part of his design? The complainant concedes that the exact shading shown in the drawing is not material, and claims that it may be reversed so that the filling of the scrolls shall be white, while the background is shaded. According to this interpretation the drawing requires merely a difference in shade between scroll and background, not the precise difference shown. I am of the opinion that a still wider interpretation is permissible, and that not only the variation suggested by complainant, but also a variation by the entire omission of shading, is contemplated, since the latter variation, as well as that produced by reversing the shading, leaves the configuration unchanged. The essentials of the design are what cannot be changed without destroying the characteristic appearance of the design; and, as the shading may be reversed or removed without such effect, we must conclude that the shading shown in the scroll work is but one of many permissible ways of treating the design, and therefore not an essential feature, but an accidental treatment by the draftsman; and that the shading is mere surplusage, an unnecessary addition to the conventional black and white outline drawing, which neither restricts nor enlarges the scope of the design. To hold differently would be perilous to complainant's claim of infringement, since the arrangement of shades set forth in the drawing has been adopted by neither complainant nor defendant.

Complainant's expert defines the shading of a design as the contrasts between the several parts thereof, or the contrasts presented to the eye between the high lights thereof and the shadow work, and says that colors may or may not be used to produce this effect, and that shading is to be distinguished from color, and that shading is often the most essential part of a design, and is so of this design. As no pictorial representation is without shading, using the term in this sense, and as such differences are the basis of all ocular appearances, we may safely assume that no design can exist without contrasts of some perceptible degree. The questions in this case are, however, whether it is useful or practicable to attempt a count of shades, and whether a design—the design covered by the patent—is completed by the black and white outline drawing, irrespective of the filling of the scroll, and irrespective of what is termed the "third shade." An attempt to count the contrasts between high lights and shadows involves many difficulties.

A contrast between the filling of the scroll and the background is created by the black lines outlining the scroll; the proximity of these lines produces this difference without the intermediate marks of shading, which serve merely to accent it. Eliminate from the Neil drawing the intermediate marks constituting the filling, and the scroll work is still to a perceptible extent shaded. Place side by side at arm's length the Sauer drawing of clear black lines on white and the Neil drawing, and substantially the same effect of scrolls with shaded filling appears in each. The difficulties of an attempt to institute a comparison between designs by a count of shades employed in each, and of an argument based upon a supposed discovery of the same number of shades in two black and white design drawings is further illustrated when we consider the matter of color. It is generally conceded that colors of any character may be employed to render the design, without affecting its essential character. If changes of shade can be effected through change of color, then a design which is understood to permit of rendering in various colors is equally well understood to permit of rendering in many shades, since colors vary greatly in their absorption of light, and changes of color therefore produce differences in shading. If shade is material, then, upon complainant's theory, a given shade shown in a drawing should exclude the use in that part of the design of any color not possessing the same shade, or having a similar power of absorption of light. I think complainant's contention on this point of three shades entirely unsound; that his drawing shows not a design of three shades, but a design that can be rendered in two, three, or more shades; and that the attempt to discover in the Neil patent drawing features corresponding in this respect to features of the manufactured carpets has served to obscure the real issues in the case; and that in the present case comparisons should not be sought within the broad field of resemblance in shades, but should be restricted to such features as are plainly and undoubtedly disclosed by the drawing and description of the Neil patent. I think that no more can fairly be said upon this point, made by the complainant the prominent feature of his brief, than that the configuration shown, though admitting of treatment in two or more shades, is one apparently well adapted for treatment in three shades of the same color; and that the general intent of the defendant to imitate complainant's carpet, as distinguished from his design, is apparent from the selection of the same treatment in respect to shades of color. The question of infringement, therefore, must be determined irrespective of resemblance in number of shades, and, upon a comparison of configuration and of general effect, to determine whether the obvious and proven similarity in appearance is due in any degree to imitation of features covered by the patent.

We find in the patent drawing and in defendant's carpet alike, a series of scrolls, projecting from or surrounding which are extending branches or ornamental work, the scrolls and ornamental work having sharp outlines. A prominent feature of the Neil design is a number of large grotesque scrolls with what have been not inaptly termed "spider-leg formations." These large scrolls

are so disposed as to give to the design, as a prominent feature, large diagonal squares. The detail of the intermediate ornamental or scroll work is comparatively inconspicuous, and therefore tends to make prominent the larger scrolls, which, in their diagonal arrangement, form an important feature of the design. In the defendant's carpets we find also the larger scrolls, with projecting arms or branches, which simulate the projecting ends of the spider-leg formation to a sufficient degree to give the defendant's large scrolls an appearance similar to the complainant's. Though not so conspicuous as in complainant's design, they yet appear as a characteristic and important feature of defendant's carpets, and are so arranged as to afford the appearance of large diagonal squares, which is a characteristic feature of the Neil design. I think the testimony of complainant's carpet designer (Brown) that, although the arrangement of the large scrolls is slightly different, it yet gives substantially the same effect, is substantiated by the exhibits. The defendant's carpets resemble, therefore, complainant's carpets in important points shown in the drawing of the complainant, and these are points to which the characteristic general effect of complainant's carpet is largely due.

The defendant lays much stress upon the fact that the figure, repetitions of which compose its carpet, is much smaller than the complete figure of complainant's pattern, and contends that the figure or pattern of complainant's carpet is about twice the height and three times the breadth of defendant's figure; that its entire size is about six times that of defendant's figure, and that it contains four large scrolls, with a large confused mass of small spirals and ornamental work, whereas the defendant's figure is composed of one large scroll and three smaller scrolls running out of it. Admitting this, the question then arises, does this smaller figure, when repeated in the carpet a given number of times, give the general appearance resulting from fewer repetitions of complainant's figure? This question must be answered in the affirmative. In the carpet of defendant, as in the drawing of complainant, the large spirals recur in substantially the same arrangement as in complainant's drawing, and the defendant's smaller annexed scrolls perform the function of the intermediate scroll and ornamental work of complainant. Upon the evidence of witnesses and examination of exhibits I am led to the conclusion that defendant's designer, having before him a sample of carpet embodying complainant's design, and also having before him the scroll work of the Bracebridge Hall book-cover exhibit, with a general purpose of producing a carpet closely resembling that of complainant through an adaptation of the Bracebridge Hall scroll, took from complainant's carpet the diagonal arrangement of the scrolls, which is not suggested by the Bracebridge Hall design, and modified the size and appearance of certain of the Bracebridge Hall scrolls, to secure the feature of prominent large scrolls, and to accent this feature by surrounding the large scrolls with ornamental work of comparatively inconspicuous detail. In my opinion, therefore, the defendant has not restricted its imitation of complainant's carpets to the adoption of

the same colors, the same shades of color disposed in the same relations, the same general proportions of background and scroll work, and approximately the same size of scroll work, but has gone further, and has imitated the complainant's carpet in essential features covered by the design patent; and I am satisfied from the testimony that the complainant has fully established a case of infringement within the doctrine of Gorham Co. v. White, 14 Wall. 511.    I am further of the opinion that the subsequent Sauer patent affords the defendant no protection.    A decree will therefore be entered for an injunction and accounting, with costs.