## ANDERSON v. SAINT.

*(Circuit Court, W. D. Pennsylvania. July 2, 1891.)*

1. PATENTS FOR DESIGN—IMPROVEMENTS.

   A patent for an improvement in a design is valid where the description in the specification, referring to accompanying drawings, and explaining the same, shows that the new design is original and distinctive of itself, and an improvement as compared with other designs, and not merely an improvement on some other particular design.

2. SAME—PATENTABILITY.

   A design for a mantel, consisting of a combination of scrolls and ornamentations, producing an effect upon the eye substantially different from any previous design, is patentable, though many of the elements going to make up the design have been in use before.

3. SAME—FAILURE TO MARK DATE OF PATENT—PLEADING.

   In a suit for infringement of a patent, the defense that complainant's articles were not marked with the date of his patent, as required by Rev. St. U. S. § 4900, cannot be raised for the first time at the hearing, but must be raised by the answer.

4. SAME—PENALTY FOR USE OF PATENT—EVIDENCE.

   Defendant purchased mantels, of a design patented by complainant, from a manufacturer who had no license to use the design, and resold them. A circular had been addressed to defendant by complainant giving notice that the design was protected by patent, and complainant's agent testified that, in a conversation with defendant in regard to his use of the design, the latter stated that complainant should hold the manufacturer to account, and not him, (defendant.) *Held*, that the evidence showed that defendant knew that the manufacturer had no license to use the patent, and was liable for the penalty of $250 prescribed by Act Cong. Feb. 4, 1887, making it unlawful for any person, during the term of letters patent for a design, to sell any article of manufacture containing the design, knowing that the design has been applied without consent of the owner of the patent.

In Equity.

*Wm. L. Pierce*, for complainant.

*Levi Bird Duff*, for defendant.

REED, J. The bill in this case alleges infringement of design patent No. 19,876, for which an application was filed March 17, 1890, and let-

ters patent granted June 3, 1890. The answer has raised several defenses, first of which to be considered is that the specification of plaintiff's patent does not contain a written description of the invention in such full, clear, and exact terms as to distinguish the same from designs before known. The specification states that William Anderson has invented new and useful improvements in a design for mantels. The description refers to accompanying drawings, showing a front and a sectional elevation of the mantel, respectively, and the description contains an explanation of the drawings, and of the letters which designate the several parts of the mantel. The claim is:

"The design for a mantel herein described and shown, consisting of the pilasters, *a,* the caps, *c,* the brackets, *m,* the facing pieces, *f,* and corner pieces, *g;* the frieze, *h,* backing strip, *k,* and moulding, *l;* the mantel board, *b,* side, *n,* and fire strips, *o,*—substantially as described."

Defendant's counsel has argued that the patent is void because the statute does not authorize patents for improvements in designs; and if not void for that reason, then it is void because, being for improvements, the specification does not distinguish between what is new and old. In *Wood* v. *Dolby,* 7 Fed. Rep. 475, it appeared that the specification used the expression, "a new and improved design for jewelry settings;" and the defendant claimed that a patent for an improved design was not within the statute, which only provides for patents for new and original designs. The court said:

"Perhaps, as has been argued for the defendant, the statute was intended to protect such designs only as would be original and distinctive of themselves, and not those which would be mere improvements upon others; but if so, the word 'improved,' in this patent, is not understood as representing that this design is a mere improvement upon another, especially as no other is mentioned, but is considered to mean that this design is of itself new and distinctive, and improved as compared with others, and, in connection with the new, to represent that it was original with the orator."

And in the case of *Dobson* v. *Dornan,* 118 U. S. 10, 6 Sup. Ct. Rep. 946, the supreme court held the specification of letters patent for a design for a carpet as setting forth a sufficient description and claim, and the patent valid, in which the inventor stated that he had—

"Invented and produced a new and original design for carpets, of which the following is a specification: The nature of my design is fully represented in the accompanying photographic illustration, to which reference is made. I claim as my invention the configuration of the design hereunto annexed, when applied to carpeting."

Under these authorities, I think the defendant's objections are not well taken, and the patent valid in this respect.

Defendant's answer further avers that the design was used, in combination and detail, more than two years before the plaintiff's application for a patent, and is not novel or original. In this connection, defendant's counsel has contended that the testimony shows sales by the plaintiff before obtaining his letters patent, and that, under the law, sales and public use, at any time (no matter how short) before the letters patent were granted, invalidate the patent. The testimony shows sales by

the plaintiff, of mantels bearing his design, within two years before filing his application for a patent, but does not show any sales prior to that time. I have already held in the case of *Anderson* v. *Eiler*, 46 Fed. Rep. 777, that such sales and public use must be more than two years before the filing of the application, and, for the reasons given there, now hold this objection as not well taken. The testimony in relation to the patent in issue in this case does not show any acts on the part of the plaintiff from which abandonment by him of his rights can be presumed or inferred. The testimony upon the question of want of novelty shows the manufacture and sale by Schuette & Co. of mantels of different designs, and photographs of some of these designs were offered in evidence. Schuette & Co. have had mantels of these designs on sale since January, 1886. Defendant's counsel also offered in evidence a book called the "Universal Moulding Book," and another called "Thompson's Album of Mantels," both of which had been published long prior to the filing of plaintiff's application for a patent, and both of which books were for general use in the trade. In the well-known case of *Gorham Co.* v. *White*, 14 Wall. 511, the supreme court say:

"The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly; but, in whatever way produced, it is the new thing or product which the patent law regards. To speak of the invention as a combination or process, or to treat it as such, is to overlook its peculiarities. * * * A patent for a product is a distinct thing from a patent for the elements entering into it, or for the ingredients of which it is composed, or for the combination that causes it. We do not say that, in determining whether the two designs are substantially the same, differences in the lines; the configuration, or the modes by which the aspects they exhibit are not to be considered; but we think the controlling consideration is the resultant effect. * * * What is the true test of identity of design? Plainly, it must be sameness of appearance, and mere differences of lines in the drawing or sketch. A greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity. * * * If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

Where a patent was for a design consisting of the representation of a bird upon a branch or twig, with various accessories, and the evidence showed several pre-existing bird designs, held, that the design was yet new and original, since none of the alleged anticipations were like it in appearance, either in outline or detail. *Wood* v. *Dolby*, 7 Fed. Rep. 475. A claim is not defeated merely because scrolls and ornamentation similar in effect to the scrolls and ornamentation described have before been employed, if a new idea is embodied in their method of their arrangement. The statute permits a patent for any new, useful, and original shape or configuration of any manufacture; and, where the arrangement of ornament and shape is new, useful, and original, the invention is patentable. *Simpson* v. *Davis*, 12 Fed. Rep. 144; Judge BENEDICT saying:

"Against this claim the only defense made is that the distinctive features of the newel-post described were to be found in other newel-posts prior to the date of the plaintiff's invention, and many of them, in fact, copied by the inventor himself from newel-posts erected in New York. But here the difficulty with the defense is that there is no evidence that any newel-post substantially similar in shape and configuration to the one described in the plaintiff's patent had ever been designed. The arrangement of ornament and shape presented by the plaintiff's post is new, useful, and original."

To the same effect is *Kraus* v. *Fitzpatrick*, 34 Fed. Rep. 39. In the present case no mantel which has been shown in evidence to have been designed before the plaintiff's mantel is like the plaintiff's in appearance, either in ornament, shape, or configuration. The Schuette mantels, in some of the details of ornamentation, are similar to the plaintiff's mantel, but the difference between the two designs is plain to the eye, even, of the ordinary observer. In neither of the books offered in evidence do I find any design which, under the rules I have cited, resembles the complainant's design. In my judgment his patent is valid upon the question of novelty.

Defendant further claims that the design is a mechanical aggregation of old forms and ornaments, shows no invention, and is not patentable.

"Design patents stand on as high a plane as utility patents, and require as high a degree of exercise of the inventive or originative faculty. In patentable designs a person cannot be permitted to select an existing form, and simply put it to a new use, any more than he can be permitted to take a patent for a mere double use of a machine; but the selection and adaptation of an existing form may amount to patentable design, as the adaptation of an existing mechanical device may amount to patentable invention." *Electric Manuf'g Co.* v. *Odell*, 18 Fed. Rep. 321.

"Invention indicates genius, and the production of a new idea. Mechanical skill is applied to an old idea, and suggests how it may be modified, and made more practical." *Belting Co.* v. *Magowan*, 27. Fed. Rep. 362.

In *Untermeyer* v. *Freund*, 37 Fed. Rep. 342, Judge COXE says:

"The defendants introduced a large number of tracings from drawings found in volumes belonging to the Astor Library. * * * None were designed for watch-cases, and none, if put on a watch-case, would be mistaken for the complainant's design. None, if made now for the first time, would infringe; none can be said to anticipate. It is probably true that an expert, with the patent before him, can select from these drawings every separate feature of the design; often finding two or three of them in similar juxtaposition. The drawings would not, however, suggest the design to one who had not seen it before. A design requires invention, but a different set of faculties are brought into action from those required to produce a new process or a new machine. In each case there must be novelty, but the design need not be useful, in the popular sense. It must be beautiful. It must appeal to the eye. * * * If it presents a different impression upon the eye from anything which precedes it; if it proves to be pleasing, attractive, and popular; if it creates a demand for the goods of the originator, even though it be simple, and does not show a wide departure from other designs,—its use will be protected. * * * It is impossible to read the literature upon this subject without being convinced that the courts, though applying the same rules, have looked with greater leniency upon design patents than patents for other inventions. From the nature of things, this must be so. A design patent must relate to subject-matter comparatively trivial. The object of the law is to encourage

those who have industry and genius sufficient to originate objects which give pleasure through the sense of sight."

In *Redway* v. *Stove Co.*, 38 Fed. Rep. 582, Judge SAGE says:

"The design must be new, original, and an invention. But there need not be a great invention. That is not essential to the validity of any patent. The statute must have a construction reasonable, and at the same time favorable to its beneficial operation. * * * The design patented to complainants displays invention, and is not anticipated by any of the designs produced upon the hearing. It is not a mere aggregation of parts, as claimed by the defendant, not only for the reasons already suggested, but also because, as testified, it is a conventional design. And in this very respect it displays invention."

In *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717, the supreme court say, in speaking of the improvement in question in that case:

"It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the constitution and the patent laws to encourage and reward."

In *Atlantic Works* v. *Brady*, 107 U. S. 192, 2 Sup. Ct. Rep. 225, the supreme court say:

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge, and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monoply for every trifling device, every shadow of a shade of an idea which would naturally or spontaneously occur to any skilled mechanic or operator in the ordinary process of manufactures."

Keeping in mind the limitations and principles of the cases I have cited, I think the design shows invention. It is necessarily a small invention. The complainant was restricted within narrow limits. His mantel must conform to the general shape and configuration of mantels, to be of any utility. To be marketable, the design must be simple, not elaborate. Remembering this, the design shows invention. It differs in appearance from prior designs shown to the court. No previous design would be held, under the authorities, to be an infringement of complainant's design, if subsequent to it. It is a conventional design, and, while some of its elements are old, still the combination has resulted in a new and harmonious design. It was the production of a new idea, and not the result of mechanical skill applied to an old idea. An examination of prior designs would not suggest complainant's design to an expert who had not seen it before. It presents a different impression to the eye from anything which has preceded it, and is pleasing and attractive. The testimony shows that complainant's mantel has commended itself to the trade, and immediately became popular. This public acceptance is to be considered as persuasive in favor of the invention, and has also a bearing upon the question of utility. *Box Co.* v. *Nugent*, 41 Fed. Rep. 139; *Simpson* v. *Davis*, 12 Fed. Rep. 144; *Stearns* v. *Phillips*, 43 Fed.

Rep. 792. Part of this popularity was doubtless due to certain mechanical improvements in construction, which rendered the mantel more durable, and less likely to be injured in handling and shipping; but the testimony shows that the popularity was largely due to the design. The case of *Lehnbeuter* v. *Holthaus*, 105 U. S. 94, has a direct bearing upon the question of utility, as well as novelty; the supreme court saying:

"The patent is *prima facie* evidence of both novelty and utility, and neither of these presumptions has been rebutted by the evidence. * * * The fact that it has been infringed by defendants is sufficient to establish its utility as against them."

The patent may be sustained either as for a new and original design for manufacture, or as for a new, useful, and original shape or configuration of an article of manufacture. *Manufacturing Co.* v. *Adkins*, 44 Fed. Rep. 280; *Simpson* v. *Davis, supra.*

Defendant's counsel has raised the question as to the failure of complainant to mark his mantels as patented, accompanied by the date of the patent, as required by section 4900 of the Revised Statutes. The mantels were stamped with the words, "Our designs patented," but no date was given. Notice was given verbally, and by written circular, to the defendant by plaintiff, but no date appears to have been mentioned; and it was held in *Association* v. *Tilden*, 14 Fed. Rep. 740, that the notice of the existence of the patent must also be accompanied by notice of the time when the patent was granted. This defect would go to the question of damages, were it not for the fact that it is raised for the first time at the hearing, and, not being raised by the answer, cannot now be considered. *Rubber Co.* v. *Goodyear*, 9 Wall. 788.

No question arises as to the infringement by defendant. It is substantially admitted by the answer; and, even if it were not, it was conceded by defendant's counsel on the argument, and the testimony clearly shows it.

One other question remains to be considered. Complainant's counsel, at the hearing, gave notice that, in the event of a favorable decision, he would move for a decree imposing the penalty of $250 provided by the act of congress of February 4, 1887. Testimony has been taken on both sides upon this question, and counsel have argued it; so that it may be properly considered at the present time. The act provides that, during the term of letters patent for a design, it shall be unlawful for any person other than the owner, without the license of such owner, to apply the designs secured by such letters patent, or any colorable imitation thereof, to any articles of manufacture for sale, or to sell or expose for sale any article of manufacture to which such design or colorable imitation shall, without the license of the owner, have been applied, knowing that the same has been so applied. And the act further provides that any person violating the provisions of the act shall be liable to a penalty of $250. That portion of the act which is penal in its nature must be strictly followed, and the defendant brought within its letter and spirit. The complainant must show that the defendant, who was a dealer, not a manufacturer, sold the mantels in question in this case, knowing that

the maker had no license to apply complainant's design. In a case against a maker, he would know he had no license; and proof of manufacture and want of license would satisfy the statute. *Pirkl* v. *Smith*, 42 Fed. Rep. 410. But in the present case the complainant must go one step further, and prove the knowledge by the dealer of lack of license by the maker. Complainant's counsel concedes this, but contends that he has proven such knowledge, or facts and circumstances from which it can be inferred. It appears that this defendant purchased the mantels which infringe from Edward Germain, a manufacturer of East Saginaw. Germain had no license from complainant to apply or use his design. The patent was granted June 3, 1890. In the same month a circular, signed by Anderson and addressed to the defendant at his place of business, was deposited in the post-office at complainant's place of business. The presumption is that it reached him. *Rosenthal* v. *Walker*, 111 U. S. 185, 4 Sup. Ct. Rep. 382. That circular stated: "Our mantels are now protected by design patents, and which means that any parties manufacturing after any of our designs will be prosecuted for infringement." A. M. Turner, agent for the complainant, testifies that he had a conversation with defendant, shortly after the patents were granted, on the subject, and the defendant told him that he thought the complainant "should go for Germain instead of him, [the defendant.]" Mr. Saint was called as a witness in this case on other matters, but was not examined by his counsel on this matter. I think the testimony warrants the conclusion that he was fully aware when he sold mantels of this design after June, 1890, that the maker had no license from complainant. It may be possible that some of the mantels which he sold after this period were made and purchased by him before June 3, 1890, including the one sold to complainant's witness; but this is a fact peculiarly within his own knowledge, and he has not seen fit to testify on the subject. It would be matter of defense in any event, and complainant is not obliged to prove the contrary, in order to get the benefit of the act of 1887. I think the complainant is entitled to move for the penalty imposed by the act of 1887, if he so desires. Let a decree be drawn in accordance with this opinion.