BOLTE & WEYER CO. v. KNIGHT LIGHT CO.

(Circuit Court of Appeals, Seventh Circuit. May 11, 1910. Petition for Rehearing Denied June 10, 1910.)

No. 1,635.

1. PATENTS (§ 252*) — "INFRINGEMENT" — DESIGNS — "SAMENESS OF APPEARANCE."

The object in a design patent is, not to identify the article as an article of trade, but to ornament it, so as to make it pleasing to the eye; and while "sameness of appearance" is identity of design, the test of infringement is not whether an ordinary purchaser might be deceived into buying one article for the other, but the sameness of appearance which constitutes "infringement" is the sameness of æsthetic effect on the eye of an ordinary observer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 394–396; Dec. Dig. § 252.*

For other definitions, see Words and Phrases, vol. 4, pp. 3590–3594.]

2. PATENTS (§ 328*)—INFRINGEMENT—DESIGN FOR LAMPS.

The Weyer design patent, No. 38,638, for a design for lamps, held not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit in equity by the Bolte & Weyer Company against the Knight Light Company. Decree for defendant, and complainant appeals. Affirmed.

The appeal is from a decree dismissing the bill for want of equity. The bill was to restrain infringement of letters patent. No. 38,638, issued June 25, 1907, to Joseph J. Weyer, for design for lamps. The design is as follows:

The alleged infringing design is as follows:

P. C. Dyrenforth & Russell Wiles, for appellant.

Donald M. Carter, for appellee.

Before GROSSCUP, SEAMAN, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion:

Counsel for appellant lay down the rule of infringement as follows: "Would an ordinary purchaser, familiar with the design of the patent, be deceived into purchasing the defendant's device, believing it was the device of the patent?" and in support of this test cite the cases of Smith v. Whitman Saddle Co., 148 U. S. 680, 13 Sup. Ct. 768, 37 L. Ed. 606, and Jennings v. Kibbe (C. C.) 10 Fed. 669. We do not think that these cases support this test. The rule laid down in Jennings v. Kibbe (quoted in Smith v. Whitman Saddle Co.) is as follows:

"The true test of identity of design is sameness of appearance—in other words, sameness of effect upon the eye; that it is not necessary that the ap-

pearance should be the same to the eye of an expert, and that the test is the eye of an ordinary observer, the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give."

Design patents are to make that, which otherwise is useful, ornamental as well. Many designs, while differing in detail, may present to the ordinary observer the same appearance. "Sameness of appearance" is "identity of design." But the object in a design patent is not to identify the article as an article of trade, but to ornament it so as to make it pleasing to the eye, the true rule being, What is the æsthetic effect? And does the alleged infringing device produce upon the eye of the ordinary observer the same æsthetic effect? The "sameness of appearance" is the sameness of æsthetic effect on the eye.

In the case before us, it does not seem to us that the æsthetic effect of the patented design, and of the alleged infringing design, are the same. Neither, to say the least, is distinctively æsthetic. Whether the patented design is sufficiently so to entitle it to a patent, we do not decide. The alleged infringing device departs from the lines so widely—produces, in our judgment, upon the eye of the observer, in the matter of pleasingness of effect, a result so different—that we cannot hold it to be the same design.

The decree of the Circuit Court is affirmed.

NOTE.—The following is the opinion of Kohlsaat, Circuit Judge, in the lower court:

KOHLSAAT, Circuit Judge. Complainant, who had heretofore been granted a mechanical patent for the device in suit, brings suit to enjoin infringement of design patent No. 38,638 granted to J. J. Weyer for a lamp on June 25, 1907. At the outset defendant insists that inasmuch as section 4933 of the Revised Statutes (U. S. Comp. St. 1901, p. 3399) provides that "all the regulations and provisions which apply to obtaining or protecting patents for inventions or discoveries not inconsistent with the provision of this title, shall apply to patents for designs," therefore it was incumbent on the patentee to file with his application a written description of his design and of the manner and process of making and using it "in such full, clear, concise, and exact terms as to enable any person skilled in the art or science," etc., to make and use the same, and that, not having done this, the patent is void.

It appears from the following decisions of the Commissioner of Patents, viz., Ex parte Freeman, 104 O. G. 1396, Ex parte Remington, 114 O. G. 761, and Ex parte Mygatt, 117 O. G. 598, that descriptions were not only not required, but forbidden, and it further appears that as a general rule they are not furnished; so that a large number of design patents are issued without the furnishing of descriptions. In Gorham Company v. White, 14 Wall. 525, 20 L. Ed. 731, the court, speaking by Mr. Justice Strong, says of a design patent: "It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense." This is approved in Smith v. Whitman Saddle Company, 148 U. S. 680, 13 Sup. Ct. 770, 37 L. Ed. 606, where the court, speaking by the Chief Justice, quotes the language of Mr. Justice Blatchford when Circuit Judge in Jennings v. Kibbe (C. C.) 10 Fed. 669, viz.:

"The true test of identity of design is sameness of appearance—in other words, sameness of effect upon the eye—that it is not necessary that the appearance should be the same to the eye of an expert and that the test is the eye of an ordinary observer, the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the de-

sign has been placed that degree of observation which men of ordinary intelligence give." This is the settled doctrine. That being so, it is not apparent why any description should be supplied. In Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63, it is held that no description other than a drawing or photograph need be filed. This was approved in Anderson v. Saint (C. C.) 46 Fed. 761, and Britton v. White Mfg. Co. (C. C.) 61 Fed. 96. Surely this matter should and does come under the "regulations and provisions" which are excepted as "inconsistent" by section 4933 above quoted. Details in the matter and manner of construction of a design patent are unimportant except in so far as they enter into the ordinarily observant man's conception or impression of the whole design. It is the picture made upon his mind in general, which governs, not the minor differences which close examination would reveal, nor those which might catch the scrutinizing eyes of an expert.

Defendant sets up invalidity and want of infringement. Just what is the law with regard to design patents as applied to a mechanical device does not seem to be entirely clear. The statute of 1842 (Act Aug. 29, 1842, c. 264, § 3, 5 Stat. 543) provided for the granting of a design patent to any citizen who "invented or produced any new and original design for a manufacture * * * or any new and original shape or configuration of any article of manufacture," etc. Gorham Co. v. White, supra, was based upon this statute. By the amendment of 1870 (Act July 8, 1870, c. 230, § 71, 16 Stat. 209), the word "useful" is added to the last phrase, so that it reads, "or any new, useful, and original shape or configuration" and the benefit of the statute was extended to "any person," instead of "any citizen." Smith v. Whitman Saddle Co., supra, was based upon this 1870 section.

The present section 4929 was enacted in 1902. U. S. Comp. St. 1901, p. 3398. By its terms "any person who has invented any new, original, and ornamental design for an article of manufacture * * * may, * * * obtain a patent therefor." It will thus be seen that the device sought to be patented must be new and ornamental. The statutes of 1842 and 1870 do not in terms require that the design shall be ornamental, although under the former a design patent might issue for an ornament under certain conditions, and in Smith v. Whitman Saddle Company, the court, speaking of the act of 1870, says the first three classes named "plainly refer to ornament or to ornament and utility." It should be noted that the act of 1902 has but one class. It is a reasonable conclusion that a device, in order to justify the granting of a design patent, must be such as to satisfy a person of ordinary judgment and good eyesight that it is ornamental, entirely independent of the character of the article to which it is applied. It is not enough that it should present in an unobtrusive form some utility that might otherwise be clothed in less endurable garb. It must disclose inventive genius—a creation which transcends the mere attractiveness almost universally availed of by dealers in every line of trade. That every symmetrical article should be made the subject of a design patent seems unconscionable. Patent monopolies are granted for the purpose of encouraging men of genius to place their mental powers at the service of the public without sacrifice. If every one who makes a graceful adaptation of a utility to the purposes for which it is endured at all can secure a monopoly thereby, one may soon be afraid to twist a wire or whittle a stick, lest he infringe.

For the exercise of such skill as is exhibited in the lamp in suit, the benefits arising from competition are an ample inducement. The courts are quick to restrain any attempts to defraud a rival out of his own peculiar marks—those indicia which signify to the public that certain articles of trade and trade rights are exclusively his.

The several statutes above enumerated have been construed by the courts to apply to chairs, washers, lampshades, bedsteads, bottles, carriage lamps, badges, stoves, harness trimmings, saddles, spoons, and numerous other things, while the humble horseshoe calk and the syringe have been denied the protection of the statute.

While under the older statutes this practice was justifiable, since Congress is the supreme lawmaker, nevertheless, under the changed language of the statute, it does not seem that the further continuation of that practice can be justified, especially in the absence of the evidence of the touch of the hand of

genius. The lamp under consideration utterly lacks in my judgment any approach to this standard. In itself it is no ornament. No person of taste would choose it for house decoration, unless it be to hide something of utility more undesirable in form. Lamps are indispensable. No one may do without their light—whether electric, gasoline, oil, or candle. They have a universal market. New features are constantly being added. Success in trade demands it. The beneficent provisions of the federal statutes were never meant to support contentions such as complainant now urges upon the court.

Assuming, however, that the patent in suit is valid, it becomes necessary to inquire into the question of infringement. The test of identity of the two devices is, as stated in Jennings v. Kibbe, supra, "sameness of appearance, in other words, sameness of effect upon the eye" of an ordinary observer. Viewing the two devices in contrast, it at once appears that the alleged infringing lamp frame has a large upturned heat-shield, while that of the patent in suit is small and turned downward, a very marked difference, and one readily discerned by any ordinary observer. Considering the difference in the elements of the two devices, we find in defendant's device:

(1) The nonparallel arrangement of the two loops near their middle is not shown.

(2) The long connection of the loops at their center is absent in defendant's device. This is owing to the parallel arrangement of the loops of defendant's lamp at this point.

(3) The T-pipe, by means of which the pipe running to the burner is connected to the loop of complainant's design, is absent from that of defendant, the connection being made in defendant's lamp by an ornamental globe or ball.

(4) The globules at the ends of the outer loop of complainant's lamp are omitted in that of defendant, the pipe of the outer loop being curved at this point so as to dispense not only with the globule connection but also the short pipe connecting the outer loop with the inner loop at this point.

(5) The pendant globules, one of which performs the function of a plug to let out gasoline which has not been properly vaporized, the other being added for the sake of symmetry, are not present in defendant's lamp.

(6) The form of the shade is different, and is so made that a downward projecting globe may be attached.

(7) The straps of metal by which the shade is attached to the body of the lamp are absent from defendant's lamp.

The arrangement of the so-called parallel feed and supporting pipes in U-shaped loops, one within the other, is old in lamps of the type under consideration. It is shown in electric fixtures (page 139 Defendant's Exhibit, "Electric Appliance Company's Catalogue," cut No. 3987). This cut shows not only the general U-shape of the pipes, but the parallel pipe effect, also a vertical pipe having attached thereto a heat-shield substantially like that of the design patent in suit. There is thus broadly shown in this electric fixture all of the design of the patent in suit except the necessary horizontal vaporizing tube, with its valve and plug, and the bifurcated lower end of the feed pipe just above the shade. When it is considered that with an inverted burner a construction of the feed pipe and vaporizing tube above the shade is almost a mechanical necessity—certainly would be suggested by the most ordinary mechanical skill—and that the bifurcated end of the feed pipe is necessary because it is found desirable to use two burners, it is difficult to see that Weyer has done anything more than add to the Electric Appliance Company cut No. 3987, above mentioned, the necessary mechanism for the use of the inverted mantle.

The charge of infringement is not deemed to have been sustained. The bill is dismissed for want of equity.