## MAJESTIC ELECTRIC DEVELOPMENT CO. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1921.)

Nos. 3616, 3618.

1. **Patents 28—Design patent must disclose invention.**

   It requires exercise of the inventive faculty in a design, as in a utility patent, to insure validity, and the test of invention is the same.

2. **Patents 71—Rule as to anticipation applies to design patents.**

   The rule of law respecting anticipation in utility patents must apply as well to design patents and with like effect.

3. **Patents 28—Æsthetic effect is test of validity of design patent.**

   A design which is the subject of patent appeals to the eye, and the test is the æsthetic effect to the ordinary observer.

4. **Patents 328—51,043, for design for electric heater, held not infringed.**

   The Brown design patent, No. 51,043, for design for electric heater, *held* not infringed.

5. **Patents 328—51,253, for design for electric heater, held void for anticipation and lack of originality.**

   The Brown design patent, No. 51,253, for design for electric heater, *held* void for anticipation and lack of invention.

6. **Patents 35—Extensive use determinative of invention only in doubtful cases.**

   Extensive use of a patented article is sufficient to turn the scale in favor of invention only in doubtful cases.

7. **Courts 354—Decree entered pursuant to order of trial judge, but signed by succeeding judge, held valid.**

   Where a District Judge, sitting in another district by designation, heard and determined a cause and ordered that a decree be signed, filed, and entered accordingly, a decree conforming to such order, signed and entered after the term of his designation expired by the succeeding judge, *held* in effect a nunc pro tunc decree and valid.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Frank S. Dietrich, Judge.

Suit in equity by the Majestic Electric Development Company against the Westinghouse Electric & Manufacturing Company (two cases). Decrees for defendant, and complainant appeals. Affirmed.

John H. Miller, of San Francisco, Cal., for appellant.

Wesley G. Carr, of East Pittsburgh, Pa., and David L. Levy and Walter Shelton, both of San Francisco, Cal., for appellee.

Nathan Heard, of Boston, Mass., and Samuel Knight, of San Francisco, Cal. (Knight, Boland, Hutchinson & Christin, of San Francisco, Cal., of counsel), amici curiæ.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. In these cases are involved the validity of two design patents, numbered respectively 51,043 and 51,253, and, if valid, whether infringed by the defendant's device. The first comprises a front and rear perspective view of plaintiff's Exhibit 2, in case No. 492, and Exhibit 5, in 544, as designated in the lower court; and the second, a front and side perspective view of plaintiff's Exhibit 2 in case No. 544. The first of these contains the annular flange as shown in the utility patent No. 1,245,084, produced in case No. 3617, (276 Fed. 682), which is at this time decided, but by separate opinion. Reference is made thereto for a more particular description of the patented device.

[1] Let us inquire briefly respecting the legal terminology of design patents. The right to acquire such a patent is extended (section 9475, U. S. Comp. Stat. 1918) to "any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof." Generally speaking, the law relating to such patents does not materially differ from that which governs as to mechanical patents, and all the regulations and provisions which apply to the obtaining or protection of patents for inventions or discoveries are made applicable to patents for designs. Section 9481, Comp. Stat. As is said by the Supreme Court in Smith v. Whitman Saddle Company, 148 U. S. 674, 679, 13 Sup. Ct. 768, 37 L. Ed. 606, adopting the language of Mr. Justice Brown, while District Judge, in Northrup v. Adams, 12 O. G. 430, and 2 Ban. & A. 567, 568, Fed. Cas. No. 10,328:

"To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand."

It requires the exercise of inventive faculty equally in a design as in a utility patent to insure validity, and the test of invention is the

same. Hammond v. Stockton Combined Harvester & Agr. Works, 70 Fed. 716, 17 C. C. A. 356; Myers v. Sternheim, 97 Fed. 625, 38 C. C. A. 345; Rose Mfg. Co. v. E. A. Whitehouse Mfg. Co. (D. C.) 201 Fed. 926 (affirmed 208 Fed. 564, 125 C. C. A. 566); Strause Gas & Iron Co. v. William M. Crane Co., 235 Fed. 126, 148 C. C. A. 620.

[2] The very terms of the act and their implication render anticipation inimical to the validity of the patent, for the invention must be new, original, and ornamental, not known or used by others, and not patented or described in any printed publication. If so known, used, patented, or described, of course, there is anticipation. So that the rule of law respecting anticipation in utility patents must apply as well to design patents and with like effect. The result, obtained must not only be new, as in utility patents, but it must be also original, that is, having its primary conception in the mind of the inventor; and, further, it must be ornamental. This means it must possess the elements of beauty and attractiveness; and in all this there must be invention of design, which reaches beyond the exercise of mere mechanical skill. H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 Fed. 415.

[3] The design which is the subject of patent appeals to the eye. The quest is for the beautiful and attractive, as well as the ornamental, and the test is the æsthetic effect. Bolte & Weyer Co. v. Knight Light Co., 180 Fed. 412, 103 C. C. A. 558.

"It must exhibit something which appeals to the æsthetic faculty of the observer." Rose Mfg. Co. v. E. A. Whitehouse Mfg. Co., supra.

Further in comparison, for the purpose of ascertaining and determining the sameness of effect upon the eye of the observer, the viewpoint of the expert is inapplicable. The test is the effect that the design produces visualized by the ordinary observer, "giving such attention as a purchaser usually gives." Gorham Co. v. White, 14 Wall. 511, 528, 20 L. Ed. 731; Bolte & Weyer Co. v. Knight Light Co., supra.

The dry utility incident to a mechanical patent cannot be made the subject of a design patent. It is that utility which imparts a pleasing effect to the eye and appeals to the æsthetic emotions, to the sense of the beautiful, which is essential to the patentability of design. So that the attempt to patent a mechanical function under cover of a design would lead to a perversion of the purposes of the statute. Rowe v. Blodgett & Clapp Co., 112 Fed. 61, 50 C. C. A. 120; Marvel Co. v. Pearl et al. (C. C.) 114 Fed. 946; Weisgerber v. Clowney (C. C.) 131 Fed. 477.

[4] Having adverted to the legal principles as thus ascertained, let us turn to the issues propounded. The design covered by patent 51,-043 shows by its front perspective the wide marginal flange, the concavo-convex reflector, with the superadded element to provide for the dead air space, which does not change the appearance of the convex surface of the reflector, the heating unit disposed transversely to the reflector, the hood or wire cage, and the supporting pedestal; and by its rear perspective, the wide annular flange, the convex form of the reflector, the wire protector, and the pedestal. The defendant's utility

has somewhat the same appearance, save the wide annular flange, and the heating unit, which is disposed axially with the reflector. Both are of copper, and the glow of each is practically the same. The patent, of course, does not show the glow, but the eye of the observer would catch it, and it affords an element for consideration respecting infringement.

Plaintiff's design is not without attractiveness and symmetry, nor altogether devoid of decorative merit. As a piece of furniture, it is attended with a bit of charm and elegance. We have not been advised of anything in the art that in resemblance is its exact prototype. But we are impressed that the defendant's device does not infringe, and this for the reason that the wide annular flange and the particular disposition of the heating unit are so characteristic of plaintiff's device as to differentiate it instantly, even by casual observance, from that of defendant. The test, as we have seen, is the impression made upon the ordinary observer, giving such attention to the object visualized as a purchaser usually gives. This means the exercise of intelligence, with a view to discrimination.

Some testimony has been offered in support of plaintiff's contention that the similarity is so complete as to produce a sameness of appearance.

Mrs. Labatt was familiar with the Majestic heater. While passing on the street, she saw a Westinghouse heater. It struck her that it was a Majestic, but she turned back and examined it more closely, and found it to be a Westinghouse. The thing that attracted her attention, and made her doubt that it was a Majestic, was what she thought to be a change in the element, alluding to the heating element. So it is apparent that one of the very features that most potently discriminate the one design from the other is what caught her eye and caused her to look more closely. As a purchaser, she would not have been deceived.

Hiller testifies he was shown two heaters of the Westinghouse type, by a man who mistook them for the Majestic, remarking, after some discussion, "It looks very much like it." The witness proceeded:

"I showed him there was a slight difference in the element, and one thing and another, but in general appearance they were the same. I presume he purchased them on the strength of that."

Witness tells of another instance where a person told him he had bought a Westinghouse supposing it to be a Majestic. The testimony is not assuring, for if such purchases had been made under mistake as to identity, the testimony of the purchasers themselves would have been the best evidence.

Wentworth gave his clerk orders to buy a heater, without telling him the kind wanted. One was brought in and set up, and witness paid no further attention to it until Hiller called his attention to the fact some time after that he had a Westinghouse heater.

Judge Coxe's allusion to the real test, "Having seen the complainant's design in a show case or shop window, the ordinary buyer would be very likely to mistake the defendants' design for it if seen in similar

environment" (Graff, Washbourne & Dunn v. Webster, 195 Fed. 522, 115 C. C. A. 432), is apt. The assertion presupposes, however, familiarity in the first instance with the article desired to be purchased. Having such familiarity, would the purchaser be likely to be misled into purchasing an article of similar design? The testimony at the trial does not satisfactorily answer the question in the affirmative. An apt illustration is afforded by the case of Grelle v. City of Eugene, 221 Fed. 68, 137 C. C. A. 18, decided by this court. The design in controversy was for a lamp post, having a round base and column, both fluted, carrying five lamps, one at the top and four pendent. The alleged infringing device was of a post with a square paneled base and round column, severely plain, carrying five lamps similarly disposed. The dominating features which distinguished the one post from the other were the round fluted base of the one as against the square paneled base of the other, and the round fluted column of the one as contradistinguished from the plain cylindrical column of the other. These were the characteristic points of difference that induced the court to decide that there was no infringement. The distinguishing features pointed out above between the patent in suit and the defendant's device are as conspicuous and potent as those in the Grelle Case, and to our minds dominate the conclusion to be reached.

A word as to the case of Geo. Borgfeldt & Co. v. Weiss (C. C. A.) 265 Fed. 268. Plaintiff's patent was of a design for dolls. The design shows both front and side perspective. It represents a doll in bathing costume, sitting with feet bare, knees drawn up, elbows resting on the knees, and chin resting on closed hands. The defendant's design, which was aimed, no doubt, to get as near infringement as possible and miss it, has the same general features, but with cap or hood removed, with painted or imitation hair, and painted slippers. The postures of the arms and legs are somewhat varied. It was held that there was infringement because there was such close resemblance that there was a likelihood of one being mistaken for the other by the ordinary observer. The doctrine of equivalents was applied, and it was said:

"The figure shown is clearly included within the claim of the patent, whether the doll is provided with painted hair, real hair, bathing cap, military or naval cap, or any other standard form of head dress, since all of these were well-known equivalents in the actual art to which this patent relates."

In the case at bar, it can hardly be said that the rim of the defendant's device and the position of the heating unit, as presented to the eye of the observer, are the equivalents of the broad annular rim and the transected posture of the heating unit of plaintiff's design. These in combination mark the distinction.

[5] This leaves the patented design No. 51,253 to be considered.

As to this, we are persuaded there is anticipation. But if not, the device represented by the design is so plainly simple, and composed of such simple and previously known elements, as to render it a subject not fit for a design patent. This design is almost a counterpart of defendant's device with the wire hood attached, the only apparent difference being as it respects the position of the heat unit.

The resemblance of the Taylor patent is so conspicuous as to render it almost a prototype. But this aside, as counsel claim it is not an exhibit in this particular case.

The Shoenberg patent, No. 1,109,551, is suggestive in appearance, although the concavo-convex reflector is modified; and, as said by the learned trial judge:

"In its more conspicuous features the plaintiff's design also closely resembles the Warner device, the parabolic 'Simplex,' and the 'Ferranti Fires.'"

These are all significant, and denote substantial anticipation.

But the elements which go to make up the design are all simple and well known in the art: The bowl or concavo-convex reflector, the heating unit, the wire hood, and the pedestal. They present nothing new in the utility art, and much less in the decorative art, and it would be a palpable perversion of the statute if it were permitted to forestall the use of these simple elements, either singly or in combination, by the potency of a design patent covering the combination. Soehner v. Favorite Stove & Range Co., 84 Fed. 182, 28 C. C. A. 317; Kruttschnitt v. Simmons (C. C.) 118 Fed. 851 (affirmed on appeal 122 Fed. 1020, 58 C. C. A. 111); Zidell v. Dexter (C. C. A.) 262 Fed. 145.

[6] It is insisted that widespread use supplanting previous devices, of alleged similar character, in support of which there is pertinent evidence in the present controversy, ought to turn the scales in favor of the validity of the patents. Such facts are always important, and are entitled to great weight; but it is only in doubtful cases that they are alone sufficient to turn the scale in favor of invention. Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 143, 14 Sup. Ct. 295, 38 L. Ed. 103; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Morton v. Llewellyn, 164 Fed. 693, 697, 90 C. C. A. 514.

The principle is without applicability here as it respects patent No. 51,043, as the case turns ultimately upon the question of infringement. As to the other design, it is plain that it lacks invention.

[7] A query is suggested whether there was a mistrial. This court's attention has been called to the following state of the proceedings had in the lower court: Judge Dietrich, of the District Court of Idaho, was authorized by the presiding Circuit Judge to hold the district court for the Northern District of California during the months of August and September, 1920. Within the time, these cases, with another decided contemporaneously herewith, were tried before Judge Dietrich, and duly submitted within the time of his authorization to sit. His opinion, which declares that "the bills must be dismissed," seems to have been filed with the clerk of the court October 4, 1920. Later, and during the time Judge Bean, of the Oregon District Court, was authorized to hold court in the Northern District of California, the following decree was entered:

"This cause came on to be heard before the Honorable Frank S. Dietrich, United States District Judge, at the July, 1920, term of court, on the 25th day of August, 1920, and thereupon was thereafter tried from day to day until and including the second day of September, 1920, upon the introduction of evidence oral and documentary, by each party hereto, and upon the argument of counsel; and thereupon after consideration thereof it was, on the 4th day

of September, 1920, ordered that the bill of complaint be dismissed with costs to defendant, and that a decree be signed, filed and entered accordingly.

"Now, therefore, it is hereby adjudged and decreed that said bill of complaint be and the same is hereby dismissed, with costs to defendant to be taxed.

"Dated November 1, 1920.

"R. S. Bean, United States District Judge."

Upon this record it is suggested that three questions arise:

(1) Had Judge Dietrich power to act in the case at all while he was in Idaho, and not within the Northern District of California?

(2) Had he the power to act in the matter after the expiration of the term for which he was designated to hold court in the Northern District of California?

(3) Can another judge, who did not try the case, sign the decree?

The brief professes to submit the inquiry without argument. No suggestion of objection or protest against the succeeding judge's entering or signing the decree appears in the record, and it is debatable whether the questions propounded are not merely moot questions, which the court will not answer because it would decide nothing relevant to the case.

However this may be, the face of the decree entered by Judge Bean being considered, it is in effect a nunc pro tunc decree, and one which he was duly authorized to make.

Affirmed.