## MAJESTIC ELECTRIC DEVELOPMENT CO. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1921.)

No. 3617.

Patents ⬅═328—1,245,084, for electric heater, held not infringed.

The Brown patent, No. 1,245,084, for an electric heater, *held* not infringed.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Frank S. Dietrich, Judge.

Suit in equity by the Majestic Electric Development Company against the Westinghouse Electric & Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

"This is a suit to restrain alleged infringement of the appellant's patent No. 1,245,084, which is for improvement in electric heaters. The invention, as the patentee declares, "relates to electric heaters in which the heat waves are generated by a resistance coil or heating unit and are then reflected from a highly polished surface." He further declares: "One of the main purposes of my invention is to provide an electric heater or radiator in which the highly heated portions are inclosed by protecting members, but one readily accessible for examination or repair." The radiator is comprised of a concavo-convex reflector and a heating unit consisting of a resistance coil supported in spaced relation with the reflector, preferably at the focus of the curved

⬅═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

surface: also, a casing spaced outwardly from the convex surface of the reflector affording a dead air space between the casing and the reflector. The casing is provided with a marginal annular flange which is "to prevent the outer exposed edge of the heater from being heated." A protective cage, convex in form, composed of wire, is so attached to the outer extremity of the annular flange as to cover the face of the heater.

The inventor makes four claims, but only the first is relied upon as having been infringed. It reads:

"An electric heater, comprising a concavo-convex reflector, a heating unit supported at substantially the focus of said reflector, an annular member extending outwardly from the margin of said reflector, and a protective cage having guard wires arched between opposite sides of said annular member."

The appeal is from a decree dismissing the complaint.

John H. Miller, of San Francisco, Cal., for appellant.

Wesley G. Carr, of East Pittsburg, Pa., and David L. Levy and Walter Shelton, both of San Francisco, Cal., for appellee.

Nathan Heard, of Boston, Mass., and Samuel Knight, of San Francisco, Cal. (Knight, Boland, Hutchinson & Christin, of San Francisco, Cal., of counsel), amici curiæ.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Counsel for complainant claims for the invention a broad construction, on the postulate that the patentee was the first discoverer of what he terms the "radiant energy beam," and that the invention is suited to the producing of such a manifestation of radiant energy. The postulate comprises a reflector, parabolic in form, with a generator of heat rays at the focus, which, theoretically at least, would reflect the radiant energy in a beam or cylindrical shaft, which would become localized upon the object in its path and impart warmth thereto. It is not claimed for the invention that such will be the perfect result, because of the impracticability of disposing the heating unit at the very focus of the parabola; but, notwithstanding, that the great mass of the radiant energy will be cast forward in a beam or cylindrical shaft, and that the substantial result is obtained.

If the patentee was, in reality, the discoverer of this principle, he has made no claim to it, either in the specifications or in the claims of his patent. The only elements from which the inference may be drawn that the reflector is in the form of a parabola are that the drawing would seem to be of that type, and the claim that the heating unit is to be at the focus, or substantially so; there is no suggestion respecting its effect in physics, in casting a cylindrical shaft of radiant energy from a heat-producing unit so positioned as indicated by the claim.

It is significant that Brown, the assignor of the complainant, put upon the market his device, known commercially as No. 7, in 1916, long before he applied for a patent thereon. Inferentially, he must have considered himself protected by a prior patent, in which he was interested, issued to Shoenberg September 1, 1914. In this the specifications state, amongst other things, that—

"The reflector consists preferably of a highly polished metal shell *1*, which is somewhat hemispherical or dome-shaped and serves to reflect the heat waves received from the heater and direct them outwardly from its inner concave surface."

Among the claims is found: "An electric radiator, comprising a polished metallic reflector," etc., there being no suggestion, either in the specifications or in the claims, of the production of a radiant energy beam, in form a cylindrical shaft, thrown forward from the reflector. The incident is indicative, at least, that the broader concept had not then occurred to the inventor; nor did it at the time of filing his application for the patent in suit. Otherwise we must assume he would have been sufficiently specific to enunciate it with much greater clarity.

As the beam, which it is thought would be cast by parabolic reflector with the resistance coil disposed at its focus, would be a result or function of the radiator, it is not a subject of claim. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 554, et seq., 18 Sup. Ct. 707, 42 L. Ed. 1136.

But, while this is true, one would expect the patentee to make allusion to that which was uppermost in his mind, and which is the central function to be secured by his invention, in his specifications. Not having done so, the dominant inference is that his concept at the time was the narrower one, embracing reflection from any type of concavo-convex reflector. But his claim is broad enough to embrace also the broader idea, as suggested by counsel, and in this the patentee builded better than he knew. However this may be, and whatever may have been the concept as to the function to be secured, the device, in either sense, is not one that is new in the art. The Shoenberg itself is an exemplar, in which the reflector is described as somewhat hemispherical or dome-shaped. It partakes of both elements, with a flat surface at the base, and sides extending outward, spherical in contour, the whole representing a flat-bottomed dish, the functional concept being to reflect the radiant energy outwardly; and the claim is broad enough to embrace either a parabolic or a hemispherical reflector.

The Morse patent, of date March 3, 1908, embodies a reflector hemispherical in form, with an electric light bulb adjusted approximately at its focus. While the use sought to be made of the device was not the same as the use to be made of the one in suit, the concept of reflecting radiating energy in defined and limited space is there perfectly.

The Ferranti Electric Fire (defendant's Exhibits 1, 11, and 12) is a good illustration of the reflector device, and is an anticipation of the concept. The description of this device is instructive:

"A circular bowl of polished copper, which concentrates and reflects the heat rays. Like the Bastian heater, the greater part of the energy is given out as convected heat, but there is considerable radiant energy, and owing to the reflecting properties of the bowl, this can distinctly be felt at a distance of many feet."

While the heat is produced largely by convection, the idea of confining the rays in limited space, so that the radiant energy may be thrown forward with greater effect, is one of the dominant features.

The English Simplex (defendant's Exhibit 8, patent issued Septem-

ber 4, 1914) affords more than a superficial, if not a complete, disclosure of the dominant idea. In the provisional specifications the inventor states the object to be to provide "an apparatus of convenient form in which the radiant heat issues in the form of a condensed beam of rays, divergent, approximately parallel or convergent, as the case may be, and adapted to be pointed in any desired direction, horizontally or vertically."

Again, in the description, it is said the reflector may be "in whole or in part of parabolic or the like contour." And the claims are made to comprise " a conical or parabolic reflector," and a heating element arranged "so as to lie on the axis of the said reflector." While the drawings attending this patent show a conical form of reflector, that is only incidental. It may be parabolic, as declared. The functional element is the production of a circumscribed beam of radiant energy.

In physics the laws pertaining to the reflection of heat and light are the same. An electric light reflector is well illustrated by the vitreous enameled steel reflector (defendant's Exhibit 3) and the indirect lighting lamp (Exhibit 11). Familiar types of reflectors, involving the same idea, are the headlights of engines and those used on automobiles. In view of these illustrations, there is clear anticipation of Brown's reflector, correlating the idea of a radiant energy beam.

The best effect in radiation of both light and heat is obtained by disposing the unit of generation approximately at the focus of the reflector. This must be admitted, and the idea was not new with Brown.

The protecting cage in itself is not new, and if it has novelty at all, it is in the fact of connecting it with the outer rim of the annular member.

There would seem to be novelty as it respects the annular member in combination with the reflector. Its purpose and function are to protect against contact with the heated reflector. But to determine whether defendant's device infringes, it is well to note particularly the language of the claim, which is: "An annular member extending outwardly from the margin of said reflector." Looking to the specifications, the member is described as a "marginal annular flange." The drawing shows an extended flange. The specifications may be read in connection with the claim for the purpose of giving construction to the latter. The claim is, however, broader than the specification, and will embrace any member of the sort extending outwardly. The proportion to which it shall extend is suggested by the function which it is designed to subserve; that is to say, it is to protect against contact with the heat induced by the reflector. However, the invention is subject to a narrow construction. Flanges are of common use, but none of which we are aware suited to the particular purpose. Complainant's model shows a flange about the outer rim of the reflector. The annular member is really superimposed on this primary flange, but extends outwardly from it.

Now, it is contended that the defendant's design is an infringement of this annular member. The design shows a turning over of the outer rim of the reflector in the shape of a curve forming a semicircle, or a segment thereof. Its particular function appears to be to give

added strength to the reflector at the rim, and to improve its appearance. It performs substantially, the same function as complainant's primary flange, but not the broader function of the annular member, designed as a protection against contact with the heated reflector. In this defendant's device does not infringe, and it follows that the bill of complaint must be dismissed.

Two other questions have been presented: One respecting the evidentiary effect that should be given the alleged widespread use of complainant's device, to the extent of supplanting all others; and the other pertaining to the regularity of the entry of the final decree dismissing the suit with costs to defendant. We have answered these propositions in a separate opinion at this time, rendered in cases Nos. 3616 and 3618. The answer is applicable here, and reference is made thereto for supplementing this opinion in that respect.

Affirmed.