**SUPER PRODUCTS CORPORATION, a
corporation of Pennsylvania,
Plaintiff,**

v.

**METAL FRAME AQUARIUM CO., a cor-
poration of New Jersey, Defendant.**

Civ. No. 596-57.

United States District Court
D. New Jersey.
March 27, 1958.

Benjamin Asbell, Camden, N. J., Leon
Edelson, Philadelphia, Pa., of counsel,
for plaintiff.

William F. Kelly, Washington, D. C.,
Howard P. King, New York City, of
counsel, for defendant.

MADDEN, District Judge.

This is an action brought by plaintiff,
Super Products Corporation, hereinafter
referred to as Super Products, against
the defendant, Metal Frame Aquarium
Co., hereinafter referred to as Metal
Frame, alleging infringement by Metal
Frame of a design patent owned by
plaintiff, Super Products, seeking injunc-
tion against Metal Products and conse-
quential damages, including accounting
and attorneys fees.

The defendant denies the validity of
plaintiff's patent, and in addition thereto,
denies infringement thereof.

The defendant, Metal Products, filed
motion for summary judgment upon the
pleadings and accompanied such motion
with affidavits and exhibits. Upon the
hearing of such motion, plaintiff not
only opposed the motion, but orally moved
for summary judgment in favor of plain-
tiff, and subsequently filed a formal mo-
tion, together with a stipulation entered
by the attorneys for both sides herein,
that:

"The Court may finally determine
the issues of validity of the patent
in suit and of defendant's alleged
infringement thereof upon the re-
spective motions for summary judg-
ment of the plaintiff and defendant
herein."

In addition to the stipulation herein-
above referred to, there seems to be
ample authority for such action by the
courts in a patent suit of this nature.
In Pinkus v. Reilly, D.C.1947, 71 F.
Supp. 993, Judge Meaney of this Court
denied the defendant's motion for sum-
mary judgment, and on the contrary, was
satisfied from the evidence before him
that summary judgment should enter
for the plaintiff. He thereupon granted
judgment to the plaintiff, the entry of
which was to be withheld until motion
therefor would be filed. This action re-
ceived the apparent approval of the
Court of Appeals in affirming Judge
Meaney's action in 3 Cir., 1948, 170 F.2d
786. This method of procedure was like-
wise adopted in Vacheron & Constantin-
Le Coultre Watches, Inc., v. Benrus
Watch Co., D.C.S.D.N.Y.1957, 155 F.
Supp. 932.

Counsel have briefed and argued the
case well to the Court, and have intro-
duced the following exhibits:

Exhibit No. 1:
United States Design Patent #179,692
for an aquarium filter issued to Jerry
L. Malis, Wyndmoor, Pennsylvania,
February 12, 1957. (Plaintiff's pat-
ent.)

Exhibit No. 2:
An aquarium filter manufactured by
defendant, Metal Frame, 9½ inches
in length, 6 inches in width and ⅝
inches in height, made of plastic and
stamped "Metaframe". One of the al-
leged infringing articles.

Exhibit No. 3:

An aquarium filter manufactured by defendant, Metal Frame, roughly 9¾ inches square and ⅝ inches in height, made of plastic and stamped "Meta-frame". One of the alleged infringing articles.

Exhibit No. 4:

Two aquarium filters manufactured by plaintiff, Super Products, roughly 7 inches square, ½ inch in height, made of plastic. (One color gray, the other pale blue). These are the patented products.

Exhibit No. 5:

An aquarium filter made by plaintiff, Super Products, roughly 11 inches square, ½ inch in height, made of plastic. This is alleged by plaintiff to be covered by the patent in suit.

Exhibit No. 6:

United States Patent (Mechanical) #1,971,972 for "Filter Element", issued to Heinrich Adam, August 28, 1934.

Exhibit No. 7:

United States Patent (Mechanical), #2,748,075, for "Aquarium Device", issued to Norman G. Hovlid, May 29, 1956.

Note: Exhibit 8, attached to defendant's motion is a copy of Adam's patent #1,971,972, and hereinabove referred to as Exhibit No. 6.

Exhibit No. 9:

An aquarium filter manufactured by Miracle Filter Company, roughly 6¼ inches wide and 7 inches long, ½ inch in height, made of plastic, and stamped "Miracle Filter". This is the article described in Figure 2 of the Hovlid patent (Exhibit No. 7).

Exhibit No. 10:

United States Patent (Mechanical) #1,194,949, for a "Filter", issued to C. D. Burchinal, August 15, 1916.

We come, therefore, to the two main questions for decision, namely, is the patent owned by plaintiff, namely the Malis Patent (#179,692), valid, and secondly, if valid, is the patent infringed by the products of defendant, Metal Frame.

Before discussing the law and the facts in this particular case, we think it well to make some observations concerning the complexities of making decisions concerning validity of patents on the one hand, and infringement on the other. It seems that there is now no great dispute or disagreement upon the law, particularly in design patent cases, but the difficulty arises in the application of the law to the particular facts of the case then before the Court. Is the patent valid, or was it anticipated by the prior art? Does it rise to inventive genius, or is it obvious to a person of ordinary skill in the art? Does the condemned article infringe the patented article?

This is borne out by Judge Soper speaking for the 4th Circuit in Glen Raven Knitting Mills v. Sanson Hosiery Mills, 1951, 189 F.2d 845, at page 849, when he said:

"Cases have construed these statutes until today the law of design patents is well crystalized and the chief difficulty lies in applying the law to the facts."

This was likewise the view of Judge Kalodner of this Circuit (3rd) in R. M. Palmer Company v. Luden's, Inc., 1956, 236 F.2d 496, at page 498, where he said:

"In the field of judicial testing of the validity of patents, it is a common observation that the law is settled, the difficulty existing in its application."

The task of the trial judge is made the more difficult when a review of the cases leads one to the inescapable conclusion that his decision is not affirmed or reversed on the basis of whether or not there is substantial evidence to support his conclusions, but upon the inventiveness of the patent or the infringement thereof in the eyes and views of the appellate court.

In Gorham Mfg. Co. v. White, 1871, 14 Wall. 511, at page 528, 81 U.S. 511, at page 528, 20 L.Ed. 731, Mr. Justice Strong, speaking for the Supreme Court, after reviewing the facts and establishing the law, then said:

"Applying this rule to the facts of the present case, there is very little difficulty in coming to a satisfactory conclusion."

Mr. Justice Strong then went on for approximately three pages to explain why in the majority of the courts' eyes the condemned article infringed the patented article and in that case, three Justices dissented without opinion or comment.

In Fairbanks, Morse & Co. v. American Valve & Meter Co., 1926, 18 F.2d 716, at page 717, Judge Anderson, speaking for the 7th Circuit, said:

"On appeal, this court, in a sense, hears the case de novo, but it must not be forgotten that it hears, it not as a trial, but as a reviewing, court."

An examination of the Glen Raven Knitting Mills v. Sanson Hosiery Mills case, supra, discloses a review of the articles in question with the eyes of the members of the appellate tribunal, not a scrutiny examination of the view taken by the trial judge. This is further pointed out by the conflict between the majority and Judge Hastie, who dissented in the R. M. Palmer Company v. Luden's, Inc. matter, supra. There Judge Kalodner said, (236 F.2d at page 501):

"It is almost unavoidable that the visual sense is the primary testing ground, and that the design must be looked at as a whole. *We are of the opinion that the designs in this instance disclose artistic treatment in form and configuration, creating a pleasing impression and substantially different aesthetic effect.*" (Emphasis Supplied.)

and viewing the very same objects, Judge Hastie, in his dissent, said (at page 502):

"We all agree that, in the language of the majority opinion, 'the granting of a design patent * * * (must be based upon) invention of a new, original and ornamental design non-obvious to a person of ordinary skill in the art.' My disagreement is based upon the belief that

plaintiff's design cannot be reasonably said to meet that standard. The Disney figures and many other prior art caricatures of rabbits, ducks, squirrels and lambs *were before the district court and are before us.* In one or two cases plaintiff's design approximates earlier figures almost as closely as would a copy. *All of plaintiff's designs are so similar to earlier caricatures as to suggest that what plaintiff has done would necessarily be obvious to any draftsman familiar with recent developments in that field*". (Emphasis supplied.)

Does this not disclose that out of the seven members constituting the Court they all viewed the articles in question in the light of their own nature and not necessarily in the light of whether there was sufficient evidence to warrant the action of the District Court. Men are differently constituted and just because they are lawyers and judges, does not mean that they have the same natural characteristics as each other. One may have natural tendencies toward the arts, another may have imagination along mechanical lines. What would constitute invention to one gifted in the arts would not arise above "being obvious to a person of ordinary skill in the art", to the lawyer or judge that is inclined along mechanical lines. We can almost take judicial notice that there are some of our associates at the Bar who cannot drive a nail, and a very small nail at that, straight, while there are others who are regular "Do it yourself fellows", ranging in degree from straight hatchet and saw men to accomplished craftsmen who often pursue their natural advocations as a means of relaxation and mental therapy.

All of this is not said in the slightest degree of criticism of the system as this court finds it, but rather in support of it for just as juries and jurors come from all walks of life with different characteristics and natures, so do jurists, in a more limited degree, and in the final analysis the disposition is by the broad

view of the majority, aided as they might (or might not) be by the expressions and opinions of the minority. What has been said is to point up the fact that there is no hard and fast rule of thumb or mechanical yardstick to aid the court in its determination of those questions, "Is it invention?" "Is it infringed?"

We will, therefore, in the light of the foregoing, and not being quite sure of what particular nature or characteristics with which we are endowed or afflicted, take up the question of the validity of the patent in suit.

The Malis Patent (Des. #179,692) is comparatively simple of description. It is made of firm plastic and the design as shown in the patent consists of a plate (which can be changed to various sizes to accommodate various size aquariums), which has a main body portion raised ½ inch above its supporting surface by an outwardly flanged perimetrical wall. The size of the flange does not seem to be material, but is roughly ⅜ inches. The design of the plate is characterized by a series of parallel ribs extending diagonally across the raised portion of the plate which ribs are all transversely crowned to provide therebetween a series of depressed parallel grooves. The crowned top portions of the ribs are each transversely slitted at uniformly spaced points along their lengths, the slitting being such as to provide a series of parallel lines of uniformly spaced slits, which parallel lines of slits extend at an angle to the diagonally extending parallel ribs and grooves. The slits are parallel to two edges of the plate and are at right angles to the remaining two edges. Within the center of the plate is a diagonally extending trough-like depression, which depression extends cross-wise of the ribs to interrupt all but a few ribs in the region of one corner of the plate. The diagonally opposite corner of the plate is bare of any ribs and in this rib-less region is formed a hole.

The claim of the patent hereinabove described is, "I claim: The ornamental design for an aquarium filter, substantially as shown".

The defendant, Metal Frame, claims that the patent in suit is invalid in law as devoid of patentable invention over the prior art known before the contribution of the patentee and argues that the design and principle of the patent was disclosed in three prior patents, namely the Burchinal Patent, #1,194,949 (Mechanical), August, 15, 1916; the Adam Patent, #1,971,972 (Mechanical), August 28, 1934; and the Hovlid Patent, #2,748,075, May 29, 1956.

At this juncture, it might be well to remind ourselves of the presumption of validity. Section 282, Patent Act of 1952, (35 U.S.C.A. § 282), provides:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

It seems that the first two patents cited by defendant as disclosing the prior condition of the art can be dismissed in the view of this court. The Burchinal Patent, #1,194,949, is a mechanical invention for filtering sugar cane juice and other liquids of a similar nature through a filtering agent such as a cloth or screen, which filtering agent is held between two plates, the faces of which are provided with ribs forming spaces leading to an outlet. The plates are best shown in Figures 5 and 12, Exhibit 10. The Adam patent, #1,971,972 is likewise a mechanical invention for the filtering of various liquids. This is also achieved by filtering through a filtering agent such as a fibrous material of some sort, which is also held between two plates having distributing grooves formed by ribs extending inwardly from the inlet and outlet conduits to form a grid. The plates are best shown in Figure 3, Exhibit 6.

It is the view of the writer that these patents do not anticipate the patent in suit.

The Hovlid patent (Mechanical), #2,748,075 brings us closer to the patent in suit (Malis patent, Des. #179,692). The Hovlid patent is a plastic filter for an aquarium the same as the Malis patent. Its surface is roughly the same height

from the bottom of the aquarium as the patent in suit. Its surface is slitted with uniformly fine slits for the filtering process as the patent in suit. It has a hole in one corner of the plate as the patent in suit. There in the opinion of this court, the similarity ends, and it might be well to point out that the article, Exhibit 9 produced under the Hovlid patent, is different than the drawing in the patent, Exhibit 7, in that Exhibit 7, Figure 2, the slitting is parallel with two sides, and at right angles with the remaining two, while in Exhibit 9 the slitting is diagonally across the plate. There are other distinguishing features to this court, striking in so far as form and configuration are concerned as follows: The perimetrical walls are not flanged outwardly in the Hovlid patent. The surface of the plate is absolutely flat, whereas the surface of the Malis patent is alternately crowned ridged and depressingly grooved, with a deep trough running diagonally across the plate and at right angles to the previously described ridges and grooves.

This court is of the view that the design in the Malis patent (the patent in suit), when compared to the Hovlid patent, discloses artistic treatment, in form and configuration, creating a pleasing impression and substantially different aesthetic effect (see R. M. Palmer Company v. Luden's, Inc., supra, 236 F.2d at page 501), and that it meets the test as set forth in the Act, of an invention of a new, original and ornamental design, nonobvious to a person of ordinary skill in the art (see also R. M. Palmer Company v. Luden's, Inc., supra, at page 500).

We therefore, come to the question of infringement.

The rule set forth in Gorham Mfg. Co. v. White, supra, 14 Wall. at page 528:

"We hold, therefore, that if, in the eyes of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, in-

ducing him to purchase one supposing to be the other, the first one patented is infringed by the other."

has been followed in a greater majority of the cases involving design patents reviewed by this Court. See Glen Raven Knitting Mills v. Sanson Hosiery Mills, supra.

In the matter presently before the Court, it might be well to repeat the description of the patented article, make comparison with the condemned article, and see wherein any similarity lies. Repeating the description of the Malis patent, and comparing it with the condemned article, we have the following:

(a) It is made of firm plastic. This is so of the condemned article, but this does not make too much difference in the court's opinion in a design patent, as the substance used would hardly change the design.

(b) The design as shown in the patent consists of a plate (which can be changed to various sizes to accommodate various size aquariums) which has a main body portion raised ½ inch above its supporting surface by an outwardly flanged perimetrical wall. This is so in the condemned article, except that it is raised ⅝ of an inch, instead of ½ inch as in the patented article. Is ⅛ inch in height noticeable?

(c) The size of the flange does not seem to be material, but is roughly ⅜ of an inch. This is so of the condemned article.

(d) The design of the plate is characterized by a series of parallel ribs extending diagonally across the raised portion of the plate. This is so in the condemned article.

(e) Which ribs are all transversely crowned to provide therebetween a series of depressed parallel grooves. This is so in the condemned article.

(f) The crowned top portion of the ribs are each transversely slitted at uniformly spaced points along

their length. This is so in the condemned article.

(g) The slitting being such as to provide a series of parallel lines of uniformly spaced slits which parallel lines of slits extend at an angle to the diagonally extending parallel ribs and grooves. This is so in the condemned article.

(h) The slits are parallel to two edges of the plate and at right angles to the remaining two edges. This is so in the condemned article.

(i) Within the center of the plate is a diagonally extending trough-like depression which depression extends cross-wise of the ribs to interrupt all but a few ribs in the region of one corner of the plate. This is so in the condemned article.

(j) The diagonally opposite corner of the plate is bare of any ribs, and in the rib-less region is formed a hole. This is so in the condemned article.

So that we see that the condemned article has all, or practically all of the features of the patented article. How then is it different, and is this difference sufficient to make the article discernable to the prospective purchaser of ordinary observation?

Condemned article, Exhibit 2, has an additional trough-like depression extending cross-wise to the ribs; a circular depression somewhat between the two trough-like depressions, with a very light trough-like depression extending diagonally across the ribs, and a flat depression area, with the trade name of the product (Metaframe) imprinted thereon.

Condemned article, Exhibit 3, is larger and in plain description has more room for adding more trough-like depressions. The center one is not continuous, as in the patented article, but is interrupted, and in addition, there are two side troughs. There are also two circular depressions between the center trough and the side trough, with a very light trough-like depression extending diagonally

across the ribs, with all the trough-like depressions running in the direction of the flat corner with the hole therein. In addition, the article also has the flat depressed surface with the trade name "Metaframe" imprinted thereon.

Do these additions to the basic design of the Malis patent change the appearance of the condemned article sufficiently that the prospective purchaser of ordinary observation would not be misled? We think not. We think that at best the condemned article would be described as a "Deluxe" model of the Malis design patented article, and this would not be sufficient to escape the charge of infringement.

Defendant argues that "any possible aesthetic appeal, even if present, is completely concealed inasmuch as the filter is entirely covered by the gravel at the bottom of the aquarium." In support of such a theory, defendant cites no cases, and the court can find none, but it does not seem to fall within the rule laid down in Gorham Mfg. Co. v. White, supra, and quoted hereinbefore. Conversely, if such argument were tenable, it would seem probable that the Court of Appeals for the Fourth Circuit would have been faced with the problem for proper disposition of the Glen Raven Knitting Mills v. Sanson Hosiery Mills matter, supra, not to view the respective ladies' silk stocking alone as they are manufactured, but to view them as they adorned the lower extremities of varying degrees of beauty, shapeliness or deformity to reach a decision. In other words, "in use".

This the Court apparently did not do, and as a legal matter, obviously did not consider. We, therefore, consider such argument unsound under the circumstances of the case.

The Court, therefore, holds the Malis patent, #179,692, valid and infringed by the defendants. Plaintiff will have summary judgment upon their motions, and defendant's motion will be dismissed. Counsel will submit an appropriate Order.